**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

------------------------
No. 97-6178
------------------------
D. C. Docket No. 96-L-925-NE

BLUE CROSS & BLUE SHIELD
OF ALABAMA,

                              Plaintiff-Appellee,

                versus

DOYLE G. SANDERS and
TINA M. SANDERS,

                              Defendants-Appellants.

------------------------
Appeal from the United States District Court
for the Northern District of Alabama
------------------------

**(April 13, 1998)**

Before TJOFLAT and HULL, Circuit Judges, and KRAVITCH, Senior
Circuit Judge.

KRAVITCH, Senior Circuit Judge:

This case, brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, presents questions of subject matter jurisdiction, federal preemption, and statute of limitations.

Blue Cross and Blue Shield of Alabama ("Blue Cross") sued Doyle G. Sanders and Tina M. Sanders ("the Sanderses") under ERISA, 29 U.S.C. § 1132(a)(3)(B). The district court denied summary judgment to the Sanderses and granted summary judgment to Blue Cross. See Blue Cross & Blue Shield of Ala. v. Sanders, 974 F. Supp. 1416 (N.D. Ala. 1997). We affirm.

I.

From June 1990 to May 1992, the Sanderses were participants in a health benefits plan ("the Plan") offered through Mr. Sanders's employer, the Nichols Research Corporation ("NRC"). The Plan, an "employee welfare benefit fund" under 29 U.S.C. § 1002(1), was self-funded by NRC, which paid the cost of all claims approved by Blue Cross, the "Claims Administrator" under the terms of the Plan. See Plan at 1, § I, ¶ 2.

The version of the Plan at issue here was executed on August 23, 1991, with a retroactive effective date of January 1, 1991. The "Subrogation" provision of the Plan stated in part:

> If the Claims Administrator pays or provides any benefits for a Member under this Plan, it is subrogated to all rights of recovery which that Member has in contract, tort or otherwise against any person or organization for the amount of benefits paid or provided. That means that

1

the Claims Administrator may use the Member's right to recover money from that other person or organization.

Separate from and in addition to the Claims Administrator's right of subrogation, if an Employee or a member of his family recovers money from the other person or organization for any injury or condition for which benefits were provided by the Claims Administrator, the Member agrees to <u>reimburse</u> the Claims Administrator from the recovered money that amount of benefits the Claims Administrator has paid or provided . . . .  The right to reimbursement of the Claims Administrator comes first even if the Member is not paid for all of his claim for damages  . . . or if the payment he receives is for, or is described as for, his damages (such as personal injuries) for other than health care expenses . . . .

Plan at 38, § XI - Subrogation, ¶¶ 1-2 (emphasis in original).

In March 1991, Mrs. Sanders was injured in an automobile accident, which resulted in various medical expenses.  Blue Cross authorized the Plan to pay medical providers a total of $12,678.69 for these expenses.  In November 1991, the Sanderses filed suit in Alabama state court against both the owner and the driver of the vehicle.  The suit did not include any claim for medical expenses.  The Sanderses won a default judgment, which was satisfied by a payment of $200,000 in October 1992.  They did not notify Blue Cross about the judgment, but Blue Cross, upon learning of the judgment, requested that they reimburse the Plan in the amount of $12,678.89.  They refused.

In April 1996, Blue Cross, on behalf of the Plan, sued the Sanderses in federal district court under 29 U.S.C. § 1132(a)(3)(B).  Section 1132(a)(3) states in part:

A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter

2

or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

In its complaint, Blue Cross requested that the court: (1) pursuant to 29 U.S.C. § 1132(a)(3)(B)(i), issue a declaratory judgment interpreting Section XI of the Plan to require, inter alia, that the Sanderses reimburse the Plan the amount of $12,678.89; and (2) pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii), enforce Section XI of the Plan and obtain reimbursement from the Sanderses in the amount of $12,678.89.

In their answer, the Sanderses admitted that Blue Cross was a fiduciary seeking equitable relief under 29 U.S.C. § 1132(a)(3). See Answer at 2, ¶ 4 ("The Defendants admit the allegations of paragraphs 1 through 7 except this action is not prosecuted by Nichols Research Corporation's Employee's Health Benefit Plan, the real party in interest, as required by Rule 17, Federal Rules of Civil Procedure."); Complaint at 2, ¶ 5 (stating that the court had subject matter jurisdiction under 29 U.S.C. § 1132(a)(3) because the action was brought by a fiduciary under an employee welfare benefit plan to enforce provisions of the plan); id. at ¶ 3 (stating that Blue Cross was a Plan fiduciary with standing to bring an action under 29 U.S.C. § 1132(a)(3)); Answer at 2-3, ¶¶ 3(c), 6, 12 (stating that Blue Cross was seeking "equitable" relief[1]).

---

[1] See Answer at 2, ¶¶ 3(c)("Since subrogation is an equitable remedy, the Plaintiff is now barred by waiver, estoppel, latches

3

The parties filed cross-motions for summary judgment.  The district court denied summary judgment to the Sanderses and granted summary judgment to Blue Cross.  See Blue Cross & Blue Shield of Ala. v. Sanders, 974 F. Supp. 1416 (N.D. Ala. 1997).  In its order, the court determined that the Plan conflicted with Alabama's common law of subrogation, but it ruled that ERISA preempted this state law.  Id. at 1419-22.  The court concluded: "Under the plan's provisions on subrogation, the plan is entitled to recover the $12,678.69 that it has paid for Tina M. Sanders' injuries."  Id. at 1422.[2]

On appeal, the Sanderses argue that:

(1)   the district court lacked subject matter jurisdiction over this case brought under 29 U.S.C. § 1132(a)(3)(B) because:
    (a)   Blue Cross was not a "fiduciary" under 29 U.S.C. § 1132(a)(3); and
    (b)   the relief sought was not "equitable" under 29 U.S.C. § 1132(a)(3)(B);

(2)   Alabama law prohibited Blue Cross, on behalf of the Plan, from recovering money from the Sanderses' tort action;

(3)   the instant action was barred by the statute

---

[sic] or unclean hands to maintain this action against your Defendants . . . ."); id. at 2, ¶ 6 ("The Defendants deny that the reimbursement provisions of the plan are binding upon the Defendants in this equitable proceeding."); id. at 3, ¶ 12 ("[T]he Plaintiff is seeking to come into this court of equity with unclean hands; all of its claims are barred by equitable principles, equitable estoppel and waiver.").

[2]  In granting relief based on the "plan's provisions on subrogation," the district court apparently is referring to the second paragraph of "Section XI - Subrogation," which requires reimbursement, not the first paragraph, which addresses subrogation.  See Plan at 38, § XI - Subrogation, ¶¶ 1-2.

4

of limitations; and

(4)   the reimbursement provision of the Plan should not apply retroactively to medical benefits that were paid on Mrs. Sanders's behalf before the Plan was executed.[3]

We analyze the Sanderses' arguments de novo, applying the same legal standards that bound the district court and viewing all facts and any reasonable inferences therefrom in the light most favorable to the non-moving party.  See Hale v. Tallapoosa County, 50 F.3d 1579, 1581 (11th Cir. 1995).  Summary judgment is appropriate only when "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

## II.

The Sanderses contend that the district court lacked subject matter jurisdiction over the instant suit brought under 29 U.S.C. § 1132(a)(3)(B) because: (a) Blue Cross was not a "fiduciary" under 29 U.S.C. § 1132(a)(3); and (b) the relief sought was not "equitable" under 29 U.S.C. § 1132(a)(3)(B).

The Sanderses did not make this argument before the district court.  Indeed, in their answer, they explicitly admitted that Blue Cross was a fiduciary seeking equitable relief.  See Answer at 2-3, ¶¶ 3(c), 4, 6, 12.  Notwithstanding the Sanderses' failure to raise the issue in the district court, this court may review subject

---

[3] Without explanation, the Sanderses also refer to a variety of other equitable defenses:  laches, waiver, estoppel, and unclean hands.  See Sanderses' Br. at 27.  We summarily reject these arguments as meritless.

5

matter jurisdiction sua sponte. See Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1468 (11th Cir. 1997) (stating that this court may conduct plenary review of subject matter jurisdiction and that this court has the obligation to inquire into subject matter jurisdiction whenever it may be lacking) (citations omitted); see also Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

In determining whether the district court had subject matter jurisdiction, we respect the important distinction between the lack of subject matter jurisdiction and the failure to state a claim upon which relief can be granted. In Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773 (1946), the Court ruled that a claim alleged to arise under federal law should not be dismissed for lack of subject matter jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." Id. at 685, 66 S. Ct. at 777. Thus, a federal court may dismiss a federal question claim for lack of subject matter jurisdiction only if: (1) "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction"; or (2) "such a claim is wholly insubstantial and frivolous." Id. at 682-83, 66 S. Ct. at 776. Under the latter Bell exception, subject matter jurisdiction is lacking only "if the

6

claim 'has no plausible foundation, or if the court concludes that a prior Supreme Court decision clearly forecloses the claim.'" Barnett v. Bailey, 956 F.2d 1036, 1041 (11th Cir. 1992) (quoting Olivares v. Martin, 555 F.2d 1192, 1195 (5th Cir. 1977)); see also McGinnis v. Ingram Equipment Co., Inc., 918 F.2d 1491, 1494 (11th Cir. 1990) (en banc) ("The test of federal jurisdiction is not whether the cause of action is one on which the claimant can recover.  Rather the test is whether 'the cause of action alleged is so patently without merit as to justify . . . the court's dismissal for want of jurisdiction.'") (quoting Dime Coal Co. v. Combs, 796 F.2d 394, 396 (11th Cir. 1986)).

Under the reasoning of Bell and its progeny, federal subject matter jurisdiction exists in this case as long as Blue Cross plausibly is a "fiduciary," see 29 U.S.C. § 1132(a)(3), seeking "equitable relief," see 29 U.S.C. § 1132(a)(3)(B).  Blue Cross plainly satisfied both the "fiduciary"[4] and "equitable relief"[5]

---

[4] Blue Cross has amply satisfied its burden of demonstrating that it plausibly is a fiduciary.  According to 29 U.S.C. § 1002(21)(A),
> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. . . .

See also 29 U.S.C. § 1002(9) (stating that the term "person" includes corporations).

Claims administrators are fiduciaries if they have the authority to make ultimate decisions regarding benefits eligibility.  Compare Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio, 982 F.2d 1031, 1035 (6th Cir. 1993) (holding that claims administrator was fiduciary because it "retained

7

authority to resolve all disputes regarding coverage"), with Baker v. Big Star Div. of the Grand Union Co., 893 F.2d 288, 290 (11th Cir. 1989) ("An insurance company does not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer, especially if, as in this case, the claims processor has not been granted the authority to make the ultimate decisions regarding eligibility."); Harris Trust and Sav. Bank v. Provident Life and Accident Ins. Co., 57 F.3d 608, 613 (7th Cir. 1995) (ruling that claims administrator was not a fiduciary where employer had the right to decide all disputed and non-routine claims); and Kyle Rys., Inc. v. Pac. Admin. Servs., Inc., 990 F.2d 513 (9th Cir. 1993) (stating that plan administrators are not fiduciaries when they merely perform ministerial duties or process claims).

According to this standard, Blue Cross likely is a fiduciary under 29 U.S.C. § 1132(a)(3) because Blue Cross has full authority to determine payment eligibility for submitted claims and to review denied claims. See Plan at 45-48; Administrative Services Agreement between Blue Cross and Blue Shield of Alabama and Nichols Research Corporation, Inc. at 2, 9.

[5] Blue Cross has more than satisfied its burden of demonstrating that the relief sought is plausibly "equitable." Blue Cross essentially seeks specific performance of the reimbursement provision of the Plan. Specific performance is an equitable remedy available when legal remedies are inadequate. See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478, 82 S. Ct. 894, 900 (1962). Legal remedies were inadequate here because ERISA preemption would have precluded Blue Cross from suing the Sanderses at law in state court, cf. Landwehr v. Dupree, 72 F.3d 726, 736-37 (9th Cir. 1995) (holding that where state law claims for damages would fall within ERISA's preemptive scope, plan beneficiaries had no adequate remedy at law), and because Blue Cross's only potential federal remedy was equitable, see 29 U.S.C. § 1132(a)(3), not legal, see 29 U.S.C. § 1132(a)(1)-(9) (listing types of civil enforcement actions that may be brought under ERISA). Moreover, because Blue Cross had no other available remedy, specific performance is "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3)(B). Cf. Varity Corp. v. Howe, 516 U.S. 489, 514, 116 S. Ct. 1065, 1079 (1996) ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'").

In arguing that the relief sought by Blue Cross is not equitable, the Sanderses rely on FMC Med. Plan v. Owens, 122 F.3d 1258 (9th Cir. 1997), which, like this case, involved a fiduciary

seeking reimbursement pursuant to a benefit plan provision requiring reimbursement from an insured who recovered payments from a third party. The Owens court stated that the action was essentially "a breach of contract claim for monetary relief" that did not fall within any of three traditional categories of equitable relief: injunction, mandamus, or restitution. Id. at 1261. The court thus ruled that the action was legal, rather than equitable, and not authorized under 29 U.S.C. § 1132(a)(3). Id.; but see Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co., 57 F.3d 608, 615-16 (7th Cir. 1995) (holding that employer's claim for reimbursement of benefits pursuant to plan provision constituted action for restitution, which was equitable relief under § 1132(a)(3)(B)).

In our view, Owens appears to be based on an unduly narrow reading of Mertens v. Hewitt Assocs., 508 U.S. 248, 113 S. Ct. 2063 (1993), which held that 29 U.S.C. § 1132(a)(3) does not allow a suit by plan participants for money damages against nonfiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty. In Mertens, the Court reasoned that "equitable relief," as used in § 1132(a)(3)(B), means those types of relief that were "typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." 508 U.S. at 256, 113 S. Ct. at 2069 (emphasis in original); see also id. at 260, 113 S. Ct. at 2071 (stating that traditional equitable relief of restitution includes disgorgement of ill-gotten plan assets or profits). Relying on Mertens, the Owens court held that "equitable relief" includes only injunction, mandamus, and restitution. See 122 F.3d at 1261 (stating that the Ninth Circuit has interpreted Mertens as allowing "only the traditional forms of equitable relief under section 1132(a)(3)-injunction, mandamus, and restitution") (citing Watkins v. Westinghouse Hanford Co., 12 F.3d 1517 (9th Cir. 1993)).

The Court in Mertens, however, did not imply that specific performance is unavailable under 29 U.S.C. § 1132(a)(3)(B). Because specific performance is a traditional form of equitable relief, see Owens-Illinois, Inc. v. Lake Shore Land Co., Inc., 610 F.2d 1185, 1189 (3d Cir. 1979) ("An action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court."), we believe that specific performance may be equitable relief available under 29 U.S.C. § 1132(a)(3)(B). Other courts have so held. See In re Unisys Corp. Retiree Med. Ben. ERISA Litigation, 57 F.3d 1255, 1268-69 (3d Cir. 1995) (ruling that "equitable relief" under § 1132(a)(3)(B) includes monetary awards typically available in equity but not compensatory or consequential damages; granting retirees both specific performance of fiduciary's assurances of post-retirement medical benefits and restitutionary reimbursement of back

9

elements of this inquiry. Accordingly, because Blue Cross's ERISA claims are neither "immaterial and made solely for the purpose of obtaining jurisdiction" nor "wholly insubstantial and frivolous," see Bell, at 682-83, 66 S. Ct. at 776, we hold that the district court properly exercised jurisdiction over the case, see Health Cost Controls v. Skinner, 44 F.3d 535, 537-38 (7th Cir. 1995) (ruling that the district court had subject matter jurisdiction over an action brought by a fiduciary to enforce reimbursement rights under 29 U.S.C. § 1132(a)(3); concluding that the district court's holding that the remedy sought was not equitable "does not negate the existence of federal subject matter jurisdiction, but rather indicates that [the plaintiff] may have failed to state" a claim upon which relief can be granted); Brule v. Southworth, 611 F.2d 406, 409 (1st Cir. 1979) (holding that subject matter jurisdiction existed because plaintiff's claim was not frivolous or insubstantial).

Furthermore, we need not determine whether Blue Cross failed

---

benefits), cert. denied, 517 U.S. 1103 (1996); Bishop v. Martin Marietta Corp., No. CIV.A.95-5426, (E.D. Pa. March 31, 1997) (stating that employee suing fiduciary under § 1132(a)(3)(B) may obtain equitable relief in the form of specific performance of fiduciary's assurances of benefit eligibility). Because ERISA plausibly authorized the relief sought by Blue Cross, the district court had subject matter jurisdiction over this case.

We note that Blue Cross sued under 29 U.S.C. § 1132(a)(3)(B). We therefore are not presented with the question of whether an action to compel reimbursement could be considered an injunctive action allowable under 29 U.S.C. § 1132(a)(3)(A) (authorizing suit by a participant, beneficiary, or fiduciary "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan").

"to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). As this court has held, "[T]he failure to state a claim is not a jurisdictional question." Gholston v. Hous. Auth. of City of Montgomery, 818 F.2d 776, 781 (11th Cir. 1987). Thus, although we may determine sua sponte whether subject matter jurisdiction exists, we will not decide whether the plaintiff failed to state a claim unless the defendant preserved that defense in the district court pursuant to Fed. R. Civ. P. 12(h)(2). See Brule, 611 F.2d at 409 ("Having neglected to assert the defense of failure to state a claim below, defendants have waived their right to assert it now."); see also Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355, 360-61 (11th Cir. 1984) (declining to consider a defense not raised in the district court except under extraordinary circumstances).

As noted supra, the Sanderses in the district court conceded that Blue Cross is a fiduciary and that Blue Cross's reimbursement action is equitable. Although the Sanderses did include in their answer the naked assertion that Blue Cross failed to state a claim, see Answer at 1, ¶ 1 ("The complaint fails to state a claim against Defendants upon which relief can be granted."), the Sanderses waived the particular failure to state a claim defense that is implicit in their subject matter jurisdiction argument -- namely, the defense that Blue Cross is not a "fiduciary," see 29 U.S.C. § 1132(a)(3), seeking "equitable relief," see 29 U.S.C. § 1132(a)(3)(B). See Miller v. Cudahy Co., 858 F.2d 1449, 1460 (10th

11

Cir. 1988) (holding that the mere recital of the defense of failure to state a claim in defendant's answer was insufficient to preserve the issue for appellate review).

Because the Sanderses effectively waived the defense, this court will not determine whether Blue Cross stated a claim upon which relief can be granted. As the First Circuit reasoned in Brule:

> While the [defendant's] argument is presented as jurisdictional, it is plain that its underpinnings rest on the contention that plaintiffs failed to state a claim on which relief could be granted, and we think it fatal that defendants never asserted any such ground in the district court, either before or during trial. Having neglected to assert the defense of failure to state a claim below, defendants have waived their right to assert it now. Defendants now wish to breathe new life into their waived defense of failure to state a claim by presenting it as a challenge to the court's subject matter jurisdiction -- the latter being an issue which, of course, neither the parties nor the court could waive. We see no merit in this approach.

611 F.2d 406, 409 (1st Cir. 1979); see also McGinnis v. Ingram Equipment Co., Inc., 918 F.2d 1491, 1494 (11th Cir. 1990) (en banc) (holding that defendant waived the right to assert a failure to state a claim; stating that issue was not jurisdictional); Brown v. Trustees of Boston Univ., 891 F.2d 337, 356-57 (1st Cir. 1989) (same). Thus, the question of whether Blue Cross actually is a "fiduciary," see 29 U.S.C. § 1132(a)(3), seeking "equitable relief," see 29 U.S.C. § 1132(a)(3)(B), is not properly before this court.

III.

12

The Sanderses also contend that Alabama law prohibited Blue Cross from recovering money from the Sanderses' state court tort judgment. In our view, this argument is based on a misreading of Alabama law and a misunderstanding of the wide scope of ERISA preemption.

Under Alabama common law, an insurer's subrogation right, whether equitable or contractual, does not arise until the insured has been fully compensated for his loss. See CNA Ins. Cos. v. Johnson Galleries of Opelika, Inc., 639 So.2d 1355, 1357 (Ala. 1994); Powell v. Blue Cross & Blue Shield of Ala., 581 So.2d 772, 776 (Ala. 1990). The insurer has the burden of proving that the insured has been fully compensated. See Complete Health, Inc. v. White, 638 So.2d 784, 787 (Ala. 1994).

A state procedural rule supplements Alabama's substantive law of subrogation. According to Ala. R. Civ. P. 17(a),

> Every action shall be prosecuted in the name of the real party in interest. . . . In subrogation cases, regardless of whether subrogation has occurred by operation of law, assignment, loan receipt, or otherwise, if the subrogor no longer has a pecuniary interest in the claim, the action shall be brought in the name of the subrogee. If the subrogor still has a pecuniary interest in the claim, the action shall be brought in the names of the subrogor and the subrogee.

Although the Sanderses concede that ERISA preempts Alabama's common law of subrogation, see Sanderses' Br. at 27, they nonetheless contend that Alabama's procedural subrogation rule, Ala. R. Civ. P. 17(a), precludes the instant suit. They assert:

The Plan was subrogated immediately upon payment of the

13

medical benefits to the medical providers. Therefore, the Plan in the present case, or Blue Cross on its behalf, was the real party in interest with the sole right to maintain its subrogation case against the tort feasor pursuant to Rule 17(a) of the Alabama Rules of Civil Procedure.

Sanderses' Br. at 27.

The Sanderses thus interpret Ala. R. Civ. P. 17(a) to mean that because Blue Cross had subrogation rights, it could sue only the third-party tortfeasor. The Plan, however, expressly provided that Blue Cross, as Claims Administrator, had the right to reimbursement "[s]eparate from and in addition to the Claims Administrator's right of subrogation." Plan at 38, § XI - Subrogation, ¶ 2. In order for the Sanderses to prevail, therefore, this court would have to hold that Ala. R. Civ. P. 17(a) precludes a party with contractual subrogation rights from pursuing its contractual reimbursement rights.

We reject the Sanderses' argument for two reasons. First, their interpretation of Ala. R. Civ. P. 17(a) is unpersuasive. We have identified no authority holding that under Rule 17(a) a party with both subrogation and reimbursement rights may only pursue its subrogation rights. The plain language of the rule addresses only the proper form of a subrogation action, not whether a subrogee may pursue an independent action based on its right to reimbursement.

Second, even if we were to accept the Sanderses' interpretation of Ala. R. Civ. P. 17(a), we would hold that ERISA preempts this state law. As interpreted by the Sanderses, Rule

14

17(a) would preclude Blue Cross from obtaining reimbursement under the Plan. See Plan, Section XI, ¶ 2. Rule 17(a) thus would fall within the scope of ERISA preemption. See 29 U.S.C. § 1144(a) (stating that, except as provided in the saving clause, ERISA supersedes all state laws that "relate to any employee benefit plan"); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47, 107 S. Ct. 1549, 1549 (1987) (stating that ERISA preemption has an "expansive sweep" and is not limited to state laws designed specifically to affect employee benefit plans); cf. FMC Corp. v. Holliday, 498 U.S. 52, 111 S. Ct. 403 (1990) (holding that state subrogation law related to employee benefit plans because it prohibited plans from being structured in a manner requiring reimbursement in the event of recovery from a third party).

Moreover, ERISA's saving clause, 29 U.S.C. § 1144(b)(2)(A), does not protect Ala. R. Civ. P. 17(a) from preemption. The saving clause states that, except as provided in the deemer clause, "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). In Smith v. Jefferson Pilot Life Ins. Co., 14 F.3d 562, 569 (11th Cir. 1994), this court explained that the saving clause only applies if the state law meets both prongs of the following two-part test: (1) "the state law must regulate insurance within a common-sense view of the word 'regulate,'" id., and thus the law "must not just have an impact on the insurance industry, but must be specifically

15

directed toward that industry," Pilot Life, 481 U.S. at 50, 107 S. Ct. at 1554; and (2) the state law must regulate the "business of insurance," as that term is defined by cases interpreting the scope of the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, see Jefferson Pilot Life, 14 F.3d at 569 (citing Metropolitan Life Ins. Co. v. Travelers Ins. Co., 471 U.S. 724, 743, 105 S. Ct. 2380, 2391 (1985)). As this court has held, a state law satisfies the second part of this test if the law: (a) "has the effect of transferring or spreading a policyholder's risk"; (b) "impacts an integral part of the policy relationship between the insurer and the insured"; and (c) "is directed only at entities within the insurance industry." See Jefferson Pilot Life, 14 F.3d at 569 (citing Metropolitan Life, 471 U.S. at 743, 105 S. Ct. at 2391).

Ala. R. Civ. P. 17(a) fails both prongs of this two-part test. Because the rule applies to all subrogation actions, it is neither "specifically directed toward [the insurance] industry," Pilot Life, 481 U.S. at 50, 107 S. Ct. at 1554, nor "directed only at entities within the insurance industry," Jefferson Pilot Life, 14 F.3d at 569. Accordingly, the saving clause does not apply.[6]

---

[6] This case differs from FMC Corp. v. Holliday, 498 U.S. 52, 111 S. Ct. 403 (1990), which applied ERISA's saving clause because the state subrogation law was directly related to insurance. In that case, the state law prohibited subrogation or reimbursement of benefits paid or payable for tort recoveries in actions arising out of the maintenance or use of a motor vehicle, where the benefits were provided through "[a]ny program, group contract or other arrangement for payment of benefits." See FMC Corp., 498 U.S. at 59, 111 S. Ct. at 408 (citing 75 Pa. Cons. Stat. § 1719-20). Reasoning that the state law "does not merely have an impact on the

16

Moreover, even if the saving clause were applicable, the deemer clause, 29 U.S.C. § 1144(b)(2)(B),[7] would exempt the instant self-funded plan from Ala. R. Civ. P. 17(a). As the Court ruled in FMC Corp., "State laws that directly regulate insurance are 'saved' but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purpose of such state laws." 498 U.S. at 61, 111 S. Ct. at 409; see id., at 65, 111

---

insurance industry; it is aimed at it," see FMC Corp., 498 U.S. at 61, 111 S. Ct. at 409, the Court ruled that the saving clause applied. By contrast, the subrogation law at issue in this case covers all subrogation actions, including those arising outside of the insurance context. FMC Corp., therefore, does not govern this case.

Because Ala. R. Civ. P. 17(a) is not directly related to the insurance industry, the instant case is analogous to Baxter by and through Baxter v. Lynn, 886 F.2d 182, 186 (8th Cir. 1989), in which the court ruled that ERISA preempted the state common law of subrogation. As the court explained,

> [T]he law of subrogation, while generally applicable to insurance contracts, is not specifically directed toward the insurance industry. While laws regulating subrogation rights apply in part to holders of insurance, they do not regulate the insurance industry directly. . . . Thus, a common sense reading of the insurance saving clause indicates that common law rules on subrogation are not the type of state insurance regulations intended to survive the broad scope of ERISA preemption.

Id. at 186. Similarly, we hold that Ala. R. Civ. P. 17(a) is not the type of state law that is intended to survive the broad scope of ERISA preemption.

[7] According to the deemer clause, no employee benefit plan "shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B).

17

S. Ct. at 411 (holding that ERISA preempted the application of a state anti-subrogation law to an employer's self-funded health care plan).  The Sanderses' reliance on Ala. R. Civ. P. 17(a) therefore is misplaced.

IV.

The Sanderses also contend that this case is governed by a two-year statute of limitations.  Because Blue Cross's cause of action for reimbursement presumably arose when the Sanderses received payment on the default judgment in October 1992, a two-year limitations period would bar the instant suit, which Blue Cross brought in April 1996.

ERISA does not specify a limitations period for a fiduciary's suit against a participant under 29 U.S.C. § 1132(a)(3) to enforce a reimbursement provision of a plan.[8]  In an ERISA action with no congressionally mandated limitations period, the district court "must define the essential nature of the ERISA action and apply the forum state's statute of limitations for the most closely analogous

---

[8] No relevant limitations period is found in 29 U.S.C. § 1132, see Blue Cross & Blue Shield of Ala. v. Weitz, 913 F.2d 1544, 1551 n.12 (11th Cir. 1990) (stating that 29 U.S.C. § 1132 does not specify a limitations period), or in any other ERISA provision, cf. 29 U.S.C. § 1113 (providing limitations periods for suits brought "under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part"); Trustees of Wyo. Laborers Health and Welfare Plan v. Morgen & Oswood Constr. Co., Inc. of Wyo., 850 F.2d 613, 618 n.8 (10th Cir. 1988) ("The statute of limitations contained in 29 U.S.C. § 1113 applies only to actions brought to redress a fiduciary's breach of its obligations to enforce the provisions of ERISA.").

action." Byrd v. MacPapers, 961 F.2d 157, 159 (11th Cir. 1992); see also Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S. Ct. 1938, 1942 (1985) (stating that when Congress has not established a time limitation for a federal cause of action, courts should adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so). The characterization of the federal claim for statute of limitations purposes "is derived from the elements of the cause of action, and Congress' purpose in providing it. These, of course, are matters of federal law." Byrd, 961 F.2d at 159 (citing Clark v. Coats & Clark, 865 F.2d 1237, 1241 (11th Cir. 1989)).

We therefore look to Alabama law for the relevant limitations period. As a matter of first impression for this court, we hold that a fiduciary's action to enforce a reimbursement provision pursuant to 29 U.S.C. § 1132(a)(3) is most closely analogous to a simple contract action brought under Alabama law. Accordingly, we apply Alabama's six-year statute of limitations for simple contract actions, see Ala. Code § 6-2-34(9),[9] and reject the Sanders's

---

[9] Other circuits have used state contract law to establish limitations periods for civil enforcement actions brought under 29 U.S.C. § 1132. See Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge, 827 F.2d 1324, 1328 (9th Cir. 1987); Dameron v. Sinai Hosp. of Baltimore, Inc., 815 F.2d 975, 981 (4th Cir. 1987); Miles v. N.Y.S. Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983).

19

proposed two-year limitations period.[10]

V.

Finally, the Sanderses argue that the reimbursement provision of the Plan should not apply retroactively to medical benefits paid to Mrs. Sanders before the Plan was executed.[11]  The Sanderses did not raise this argument in the district court.  Under exceptional circumstances, this court may consider an issue not raised in the district court.[12]  No such circumstance exists here, however, and

---

[10] The Sanderses cite two inapposite cases in support of their contention that a two-year statute of limitations applies.  See Musick v. Goodyear Tire & Rubber Co., Inc., 81 F.3d 136 (11th Cir. 1996); O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992).  In Musick, this court determined the appropriate Alabama limitations period to apply to ERISA actions brought by employees alleging that their layoffs were motivated by the employer's desire to avoid paying retirement benefits.  81 F.3d at 137.  The court applied Alabama's two-year limitations period applicable to claims for wages and claims for discharge in retaliation for seeking worker's compensation, rather than the six-year limitations period applicable to actions on simple contracts.  Id. at 138-39.  The cause of action in Musick is entirely dissimilar to Blue Cross's claim here.

In O'Neal, this court noted that under Alabama law a subrogee's action against a third-party tortfeasor is a tort action for damages.  958 F.2d at 1047; see also Ala. Code 1975, Section 6-2-38(l),(n) (providing two-year limitations period for any injury to the person or rights of another not arising from contract).  O'Neal is not relevant, however, because the instant suit is not a subrogation action against third-party tortfeasors, but rather a suit seeking reimbursement from the Sanderses under the terms of the Plan.

[11] The Plan had an effective date of January 1, 1991, but it was executed on August 23, 1991, by which time the Plan had paid medical providers much, if not all, of Mrs. Sanders's accident-related medical expenses.

[12] In Dean Witter Reynolds, Inc. v. Fernandez, this court held:
First, an appellate court will consider an issue not raised in the district court if it involves a pure

20

we therefore deem this issue waived.

VI.

We reject all arguments raised by the Sanderses as either meritless or waived.  Accordingly, the district court's grant of summary judgment to Blue Cross is

AFFIRMED.

---

question of law, and if refusal to consider it would result in a miscarriage of justice.  Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance where the interest of substantial justice is at stake.  Fourth, a federal appellate court is justified in resolving an issue not passed on below where the proper resolution is beyond any doubt.  Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.
741 F.2d 355, 360-61 (11th Cir. 1984) (internal quotations, citations, and ellipsis omitted); see also In re Daikin Miami Overseas, Inc., 868 F.2d 1201, 1207 (11th Cir.1989) (stating that the third exception generally refers to the vindication of fundamental constitutional rights).