Mark POPOWSKI, as Fiduciary of the United Distributors Inc. Employee Health Benefit Plan, et al., Plaintiffs,

v.

Deborah PARROTT, Defendant.

No. Civ.A.1:04–CV0889JOF.

United States District Court,
N.D. Georgia, Atlanta Division.

Dec. 23, 2004.

R. Krannert Riddle, Callaway Braun Riddle & Hughes, Savannah, GA, for Plaintiffs.

Jason R. Schultz, Office of Jason R. Schultz, Atlanta, GA, for Defendant.

### ORDER

FORRESTER, Senior District Judge.

This matter is before the court on Plaintiffs' motion for a temporary restraining order [2–1]; Plaintiffs' motion for a preliminary injunction [2–2]; Defendant's motion to dismiss [6–1]; Plaintiffs' motion to add Marvin Parrot as a party defendant [10–1]; Plaintiffs' motion for leave to file supplemental brief [12–1]; Plaintiffs' motion to file supplemental brief [15–1]; Plaintiffs' motion for leave to file supplemental brief [20–1]; and Plaintiffs' motion to file supplemental brief [22–1].

## I. Background

### A. Procedural History

On March 31, 2004, Plaintiffs, Mark Popowski, as fiduciary of the United Distributors Inc. Employee Health Benefit Plan, and The Commerce Group, the Third–Party Administrator of the United Distributors Inc. Employee Health Benefit Plan, filed suit against Defendant, Deborah Parrott, under the Employee Retirement Income Security Act of 1974, § 502(a)(3), codified at 29 U.S.C. § 1132(a)(3). Plaintiffs seek reimbursement and/or restitution whether through constructive trust, equitable lien, or any other such appropriate equitable mechanism over the identifiable assets of a personal injury settlement reached by Defendant with a third party. Plaintiffs further seek attorney's fees pursuant to 29 U.S.C. § 1132(g).

### B. Facts

Deborah Parrott was seriously injured in an automobile accident on May 14, 2003. She filed suit and received $500,000 in settlement for her injuries from her underinsured motorist's insurance carrier. At the time of the settlement in October 2003, Defendant Parrott had incurred $234,557.50 in medical expenses and lost wages of $9,061.54. Of the $500,000 settlement, $175,000 was paid to her attorney; $125,000 was placed in a structured annuity to the benefit of Defendant; and the remainder of $200,000 was paid to Defendant Parrott and placed in a joint savings and/or checking account with her husband. An additional $25,000 was paid to Defendant Parrott by the tortfeasor's insurance company. Some of the money went directly to pay medical expenses, some for attorney's fees and costs, and the remainder of $2,374.64 to the Parrotts.

Defendant Parrott is employed by United Distributors, Inc., and participates in an employee health benefit plan through her employer. The health plan paid $152,889.65 in medical expenses on behalf of Defendant Parrott arising out of the automobile accident. The plan contains a reimbursement/subrogation provision which states that if a third party is responsible for the medical care and treatment, then the plan will be reimbursed for the benefits it provides. Prior to the plan making any medical payments on behalf of Defendant Parrott, she signed a reimbursement agreement stating that she understood that the plan would be reimbursed for any recovery she received on her third-party claim.

### C. Contentions

Defendant contends that the court does not have subject-matter jurisdiction over this suit because the relief Plaintiffs seek is not available under ERISA. Defendant argues that Plaintiffs are not actually seeking equitable relief, but rather seek

monetary damages for breach of the subrogation portion of the health benefit plan contract. Defendant further avers that the monetary damages are a legal remedy that cannot be sought through the equitable provisions of ERISA. Plaintiffs respond that their suit is one for equitable relief because through a constructive trust and equitable reimbursement they seek to recover specifically identifiable funds that in good conscience belong to the plan and are within the constructive possession of Defendant.[1]

## II. Discussion

The facts in this case are not in dispute. There is, however, a split in authority on the legal issue of the scope of equitable relief available under ERISA, § 502(a)(3).[2] The source of the controversy arises out of the Supreme Court's decision in *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). In *Knudson,* like the instant case, a plan administrator sought to enforce a reimbursement provision of an ERISA plan and to recover benefits paid to a beneficiary who had received settlement funds from a third party. Those funds had been placed in a California Special Needs Trust for the beneficiary's medical care. *Id.* at 208, 122 S.Ct. 708.

The Court held that the plan essentially desired to impose personal liability on the participants for a contractual obligation to pay money. *Id.* at 210, 122 S.Ct. 708. Such relief, the Court decided, was not typically available in equity. *Id.* The Court further found that a claim for money owed under a contract is legal—and not equitable—relief. *Id.* Similarly, specific performance of past due money was not typically available in equity. *Id.* at 210–11, 122 S.Ct. 708.

Next, the Court found that the relief sought by the plaintiff was not equitable because there was a distinction between restitution in equity and restitution at law. "[A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213, 122 S.Ct. 708. If "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains," restitution in equity is not available. *Id.* In those cases, the plaintiff's claim becomes one of a "general creditor" and cannot be enforced through a constructive trust or equitable lien. *Id.* Because the Special Needs Trust in *Knudson* was established under California law and was outside the control of the beneficiary, the Court held that the relief sought by the plaintiff was not restitution in equity. *Id.* at 214, 122 S.Ct. 708.

The Court further explained that the plan did not really claim the participant had some specific funds that in good conscience belonged to the plan. Rather, the plan claimed that it was "contractually entitled to *some* funds for benefits [it] con-

1. The court GRANTS Plaintiffs' motion for leave to file supplemental brief [12–1]; GRANTS Plaintiffs' motion to file supplemental brief [15–1]; GRANTS Plaintiffs' motion for leave to file supplemental brief [20–1]; and GRANTS Plaintiffs' motion to file supplemental brief [22–1].

2. Under § 502(a)(3), a civil action may be brought

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter of the terms of the plan.
29 U.S.C. § 1132(a)(3).

ferred," a claim the Court determined came within the scope of legal restitution. *Id.* at 214, 122 S.Ct. 708; *see also Mertens v. Hewitt Associates,* 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (holding that "appropriate equitable relief" under § 502(a)(3) includes only "those categories of relief that were typically available in equity").

After *Knudson,* lower courts have differed on the degree to which that case should be confined to its facts. In *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough,* 354 F.3d 348 (5th Cir.2003), Steven Mestemacher, the plan beneficiary, had been injured in an automobile accident. The plan advanced $13,643.63 in medical expenses subject to a reimbursement and subrogation provision. Mestemacher retained the law firm of Ferrer, Poirot & Wansbrough to represent him in a personal injury suit. Mestemacher received a $65,000 settlement which the law firm placed in a trust account at the Bank of America in the firm's name. *Id.* at 350.

Prior to the distribution of the funds from the firm's account, the plan filed suit against Mestemacher and the law firm seeking the imposition of a constructive trust. The court construed *Knudson* as turning only on whether the funds were identifiable or had been distributed. *Id.* at 355. The court ultimately held that a plan fiduciary's action comes within the scope of § 502(a)(3) if it seeks recovery of (1) specifically identifiable funds, (2) that belong in good conscience to the Plan, and (3) that are within the possession and control of the beneficiary. *Id.* at 356. The funds in *Bombardier* were in the possession and control of the participant because they were in the possession and control of the participant's agent, his personal injury attorney. *Id.* at 356; *but see Bauhaus USA, Inc. v. Copeland,* 292 F.3d 439 (5th Cir.

2002) (holding that where funds from settlement had been paid into registry of state court in Mississippi, funds were outside control of beneficiary, and plan could not bring suit in equity). *See also Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Varco,* 338 F.3d 680 (7th Cir.2003) (holding that § 502(a)(3) equitable relief available for constructive trust over funds recovered from third party that were subject to subrogation and rejecting defendant's claim that the plan's suit was really a legal claim to enforce contract rights); *Primax Recoveries, Inc. v. Young,* 83 Fed. Appx. 523 (4th Cir. Dec.18, 2003) (unpublished opinion) (holding that whether defendants were in possession of funds was dispositive in *Knudson* and allowing equitable ERISA action to proceed).

Contrasting authority is found in *Qualchoice, Inc. v. Rowland,* 367 F.3d 638 (6th Cir.2004). There, Robin Rowland was a member of a QualChoice employee benefit plan. On November 23, 1994, Ms. Rowland drove her car into a railcar of a train passing on unguarded and unlit tracks. After attorney's fees, she and her husband received a net settlement recovery of $107,192 from the Wheeling & Lake Erie Railroad. The last payment in the settlement was made on January 1, 2002.

On November 16, 2001, the QualChoice plan filed suit against the Rowlands contending it was entitled to equitable relief for reimbursement of $80,763.58 it had advanced to the Rowlands to pay for medical expenses. The plan sought the imposition of a constructive trust or equitable lien and argued that unlike the situation in *Knudson,* the Rowland beneficiaries actually possessed the recovered funds.

The *Qualchoice* court determined there was no binding precedent to answer the question before it: "whether a claim maintained by a fiduciary against a participant

or beneficiary, who has recovered money from another and possesses that recovery in an identifiable fund, is an equitable claim under 29 U.S.C. § 1132(a)(3)." *Id.* at 648. Instead, the court referred to *Dobbs on Remedies* and concluded that

the source of the claim asserted by Qual-Choice is a contract to pay money, and that the procedural mechanisms of constructive trust and equitable lien are not proper mechanisms for enforcing this right, as such relief would not have traditionally been awarded by a court of equity in a breach of contract action.

*Id.* at 649. The court further noted that

[t]he fact that a plan participant or beneficiary places the money he recovered from another in a bank account does not, however, change the nature of the action. The plan may have obligated Rowland to reimburse QualChoice in the event that QualChoice paid for Rowland's medical expenses, but it did not give QualChoice a property right in any particular fund.

*Id.* See also *Westaff (USA) Inc. v. Arce,* 298 F.3d 1164, 1167 (9th Cir.2002) (action by ERISA fiduciary to enforce plan reimbursement provision is legal regardless of whether the plan participant possesses an identifiable fund).[3]

The *Qualchoice* court relied on the Sixth Circuit's earlier ruling in *Community Health Plan of Ohio v. Mosser,* 347 F.3d 619 (6th Cir.2003), where the health plan paid for the participant's medical expenses caused by an accident with a negligent police officer. *Id.* at 621. The participant recovered money from a settlement with the city but did not pay any of that money to the plan. The plan fiduciary sued the participant under a breach of contract theory requesting specific performance and restitution for the medical payments. *Id.* at 622. The court dismissed the suit, finding that the plan fiduciary

did not, in its complaint, allege that it had given certain funds to [the participant], trace those funds to the settlement funds from [the tortfeasor], allege that [the participant] was unjustly enriched by retaining the settlement funds, and seek the return of the settlement funds in [the participant's possession]. Rather, [the fiduciary] sought "restitution from [the participant] for all covered services".

*Id.* at 624. In *Mosser,* the plan participant possessed the money she recovered from the city; whereas in *Knudson,* the participant never had possession over the money. *See Qualchoice,* 367 F.3d at 647. Nonetheless, the *Mosser* court still held that subrogation was not available when a participant had already recovered a settlement because subrogation does not allow a plan fiduciary to obtain a judgment of personal liability against a plan beneficiary. 347 F.3d at 623–24. Under *Mosser,* a plan administrator may use subrogation to step into the shoes of a beneficiary during settlement negotiations, but not to impose personal liability after a settlement has been reached and paid.

■ The Eleventh Circuit has not yet addressed this issue.[4] However, the court

---

3. It is possible that the Ninth Circuit may have stepped back from this position in *Honolulu Joint Apprenticeship & Training Committee of United Ass'n Local Union No. 675 v. Foster,* 332 F.3d 1234 (9th Cir.2003), where the court held that the distinction between legal and equitable restitution rests on whether there is an identifiable fund. *Id.* at 1237.

4. In *Blue Cross & Blue Shield of Alabama v. Sanders,* 138 F.3d 1347 (11th Cir.2003), the court discussed some of these issues in a passing fashion. *Id.* at 1352 n. 5 (describing specific performance as equitable relief under ERISA). However, *Blue Cross & Blue Shield* was decided before *Knudson,* which more di-

finds *Qualchoice* and *Mosser* more persuasive authority under the circumstances presented here. The only information before the court is that Defendant received slightly more than $200,000 in net settlement proceeds in October 2003. Those funds were placed in her joint checking and/or savings account with her husband. Since that date, the funds have been commingled with Defendant's other funds until at least March 31, 2004, when Plaintiffs filed this suit. Thus, unlike *Bombardier* or *Varco,* the funds have never been segregated into an identifiable amount or location.[5]

It is true that Plaintiffs cite several district court cases which apply the *Bombardier* line of cases. However, because the settlement proceeds received by Defendant here were placed directly in her checking and/or savings account and not into a medical trust or an attorney's trust account, the court finds the factual circumstances presented here more closely match *Qualchoice* and *Mosser.*

This conclusion is supported by the Supreme Court's opinion in *Knudson.* The *Knudson* court started its analysis by recognizing that a claim for money owed under a contract was not an equitable claim, but rather was legal. Next, the Court found that the plan's claim for restitution was also legal because it claimed it was contractually entitled to some, but not all, of the funds because of the benefits it conferred. While lower courts have seized upon the majority's discussion of identifiable funds in *Knudson,* that portion of the Court's opinion is *dicta.* 534 U.S. at 216, 122 S.Ct. 708.

■ The court further notes that the Eleventh Circuit seemed to indicate a similar form of analysis in *Flint v. ABB, Inc.,* 337 F.3d 1326 (11th Cir.2003), which also discussed the meaning of "appropriate equitable relief" under § 502(a)(3) and *Knudson.* In explaining "unjust enrichment," the court stated that the "law of unjust enrichment is concerned solely with enrichments that are unjust *independently* of wrongs and contracts. When the plaintiff relies on a breach of contract to supply the 'unjustness' of the defendant's holdings, the right on which he or she relies arises from the breach of contract, not from unjust enrichment." *Id.* at 1331 n. 2.

The court is not unmindful of the difficulties of Plaintiffs' position. However, as the Supreme Court noted in *Knudson,* the court must follow the instructions of Congress which stated that only "appropriate equitable relief" is available under § 502(a)(3). 534 U.S. at 220–21, 122 S.Ct. 708.

Because Plaintiffs can point to no specifically identifiable fund, the court determines that it does not have subject-matter jurisdiction over Plaintiffs' suit under § 502(a)(3), and the court GRANTS Defendant's motion to dismiss [6–1]. As such, the court also DENIES Plaintiffs' motion for a temporary restraining order [2–1]; DENIES Plaintiffs' motion for a preliminary injunction [2–2]; and DENIES AS MOOT Plaintiffs' motion to add

rectly addresses the scope of equitable remedies available under § 502(a)(3).

5. The court has no specific information on the annuity that was part of Defendant's settlement with the third-party tortfeasors. However, it is unlikely that such an annuity would be in the constructive possession of Defendant. Unlike *Bombardier,* where the court determined that funds in an attorney's account were in constructive possession of the plan participant because the attorney was the agent of the participant, the issuer of the annuity contract is not an agent of Defendant's.

Marvin Parrott as a party defendant [10–1].

### III. Conclusion

The court DENIES Plaintiffs' motion for a temporary restraining order [2–1]; DENIES Plaintiffs' motion for a preliminary injunction [2–2]; GRANTS Defendant's motion to dismiss [6–1]; DENIES AS MOOT Plaintiffs' motion to add Marvin Parrot as a party defendant [10–1]; GRANTS Plaintiffs' motion for leave to file supplemental brief [12–1]; GRANTS Plaintiffs' motion to file supplemental brief [15–1]; GRANTS Plaintiffs' motion for leave to file supplemental brief [20–1]; and GRANTS Plaintiffs' motion to file supplemental brief [22–1].

**IT IS SO ORDERED.**