PITTMAN, Judge.
In case no. 2110403, Melvin Bowers appeals from a summary judgment in favor of Dr. Andrew Hugine, Jr., in his official capacity as the president of Alabama Agricultural and Mechanical University (“the University”), and 11 members of the University’s Board of Trustees (“the Board”),[1] in their official capacities (hereinafter sometimes collectively referred to as “the University parties”). In case no. 2101238, Charlie Porter appeals from a summary judgment in favor of the University parties. Both appeals were transferred to this court pursuant to § 12-2-7(6), Ala. Code 1975, and this court consolidated the appeals, ex mero motu, for the purpose of writing one opinion. We affirm the judgments of the Madison Circuit Court.

Factual and Procedural Background

Case No. 2110403
Bowers was employed as the auxiliary-services director of the University. On September 9, 2010, he received a letter from the University officer to whom he reported, informing him that the termination of his employment had been “recommended to and approved by” the president, effective September 30, 2010. On December 29, 2010, Bowers filed an action in the Madison Circuit Court, alleging that the termination of his employment was void because, he said, the president did not have the independent authority to dismiss Bowers from his employment but, rather, that § 16-49-23, Ala.Code 1975, vested in the Board the exclusive and nondelegable authority to dismiss employees of the University from their employment. Based on those allegations, Bowers asserted claims for declaratory and injunctive relief and sought the issuance of a writ of mandamus ordering the reinstatement of his employment as well as the payment of wages and benefits lost as a result of his dismissal. The University parties answered, asserting, among other defenses, that Bowers’s claims were barred by Article I, § 14 of the Alabama Constitution of 1901, and by Alabama’s at-will employment doctrine.
The parties filed cross-motions for a summary judgment. In support of his motion, Bowers submitted a memorandum of law in which he argued that his claims based on the alleged violation of § 16-49-23 satisfied the declaratory-judgment exception to the doctrine of sovereign immunity and that his claims seeking reinstatement, lost wages, and benefits satisfied the legal-duties and ministerial-acts exceptions to the doctrine of sovereign immunity. Bowers also submitted the following evi-dentiary materials: his own affidavit; the termination letter he received from the University; and the personnel-action form *1231 documenting his dismissal from employment.
In support of their motion for a summary judgment, the University parties submitted a memorandum of law in which they argued that none of the exceptions to the sovereign-immunity doctrine applied to Bowers’s claims and that those claims were barred because Bowers was an at-will employee. The University parties submitted the following additional eviden-tiary materials: the affidavit of Cheryl K. Johnson, the University’s assistant director of human resources; the affidavit of Velma Tribue, a member of the Board; the University’s two employee handbooks — the “Faculty and Administrative-Staff Handbook” and the “Staff Handbook”; and Article IV of the bylaws adopted by the Board.
Johnson stated that she had reviewed Bowers’s personnel records and determined that he “did not have any agreement with the University that provided for a specific term of employment,” meaning, she said, that Bowers was not a contract employee, a member of the faculty, or an employee who was eligible for tenure. The personnel-action form that reflected Bowers’s termination from employment stated that “Alabama A & M employees are at-will unless designated otherwise in writing.” Johnson explained that the University maintains two separate handbooks for two separate categories of employees: the Faculty and Administrative-Staff Handbook and the Staff Handbook. Johnson stated that Bowers was a staff employee subject to the Staff Handbook, not an administrative-staff employee subject to the Faculty and Administrative-Staff Handbook. The “Introduction” section of the Staff Handbook states:
“This Handbook is not intended to constitute or be part of an employment contract between the employee and the University, nor is anything contained in this Handbook a covenant, and should not be construed as such. Unless dictated otherwise by statute, employment by the University is not for a definite term and may be terminated by the University or employee at any time, for any reason or no reason, unless otherwise agreed in writing by one authorized by the Board of Trustees to do so. The policies of the University may be changed or amended at any time, with or without prior notice. Unless dictated otherwise by statute or by virtue of being a tenured member of the faculty, employment by the University is not for a definite term and may be terminated by the University or employee at any time, for any reason, unless otherwise agreed. No supervisor or representative of the University, except for the President, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement inconsistent with this acknowledgment. If any agreement is made which is inconsistent with this acknowledgment, to be valid, any such agreement must be in writing, designated as an employment agreement, and signed by the President.”
The Staff Handbook also states that “[sjtaff employees are employees at will and may be terminated without cause by the University upon three weeks’ notice. Such terminations must ultimately be approved by the President”; it also states that the president “has the authority ... to remove any such instructors, officers, staff, or other employees.”
Tribue stated that she had been a member of the Board since 2003 and was currently serving as the secretary of the Board. She explained that the Board had adopted bylaws governing the relationship between itself and the president. She *1232 identified Article IV, § 1 of the bylaws, which states, in pertinent part:
“Specific powers and duties of the Board of Trustees are defined by the Laws of the State of Alabama. Among the duties imposed upon or granted to the Board is to establish administrative procedures and policies for the operation of the University. The Board exercises its prerogative by employing a President of the University and assigning him the responsibility of administering the University in conformity with the State laws and policies adopted by the Board of Trustees. The Board delegates all administrative activities completely to the President of the University who is held fully responsible and accountable for the execution, of all policies....”
(Emphasis added.) Tribue also identified Article IV, § 5 of the bylaws, in which the Board “delegate[d] to the President of the University the authority to staff positions ... with suitable persons at the various levels of employment at the University.”
Bowers moved to strike the affidavits of Johnson and Tribue. On August 8, 2011, the circuit court entered a judgment denying Bowers’s motion to strike, denying Bowers’s motion for a summary judgment, and granting the University parties’ motion for a summary judgment, without specifying the grounds on which it based that judgment.
Case No. 2101233
Porter was employed as the director of public safety for the University. On November 19, 2010, he received a letter from the University officer to whom he reported, informing him that the termination of his employment had been “recommended to and approved by” the president, effective December 10, 2010. Porter filed a grievance, pursuant to § 5.7 of the Faculty and Administrative-Staff Handbook, contesting his dismissal. Nancy Vaughn, the University’s director of human resources, sent Porter a letter, informing him that his position was a staff position governed by the Staff Handbook rather than an administrative-staff position governed by the Faculty and Administrative-Staff Handbook, but, she said, neither handbook entitled Porter to file a grievance or to receive a hearing before being dismissed. Porter replied to Vaughn, asserting that he was entitled to file a grievance under the provisions of the University’s Faculty and Administrative-Staff Handbook because, he claimed, as the director of public safety for the University, he was classified as “administrative staff’ pursuant to § 3.7.2 of that handbook. Section 3.7.2 defines “administrative and professional staff’ as
“all administrative/management staff responsible for developing and implementing University operating policies and procedures, and professional staff members employed by the University with significant management, supervisor, technical program and/or teaching responsibilities .... Positions in this category include the title of director or coordinator/vice presidents.... ”
(Emphasis added.) Following his reply to Vaughn, Porter received a letter from Dr. Barbara Cady, chair of the University’s grievance committee, stating that Porter’s position was a staff position governed by the Staff Handbook and that he was not entitled to file a grievance.
On March 11, 2011, Porter filed an action in the Madison Circuit Court, alleging that the termination of his employment was void because, he said, the president did not have the independent authority to terminate his employment. He asserted that § 16-49-23, Ala.Code 1975, generally vests in the Board the exclusive and non-delegable authority to hire and fire employees of the University and that § 16-49-4(a), Ala.Code 1975, specifically vests in *1233 the Board the authority to hire and fire University police officers. In the alternative, Porter alleged that the University parties had failed to follow their own policies and procedures as contained in the Faculty and Administrative-Staff Handbook by denying him the right to contest the grounds for his dismissal. Porter sought declaratory and injunctive relief with respect to both the alleged statutory violations and the alleged violations of University policies and procedures. He also sought the issuance of a writ of mandamus ordering the reinstatement of his employment as well as the payment of wages and benefits lost as a result of his dismissal.
The University parties moved for a summary judgment, contending that Porter’s claims were barred by the doctrine of sovereign immunity and by Alabama’s at-will employment doctrine. In support of that motion, the University parties submitted the affidavits of Johnson and Tribue. Those affidavits were substantially identical to the affidavits submitted in case no. 2110403, but Johnson provided additional testimony with respect to Porter’s claims. She outlined Porter’s employment history with the University, stating that he had originally been employed in 1991, when he was hired as a captain in the department of public safety. Three years later, Porter was promoted to deputy chief of the department of public safety. His initial employment with the University ended in 1997, but in 2001 he was rehired in the position of captain/crime-prevention specialist. Johnson stated that when Porter had accepted that position he had signed a document acknowledging that he had received a copy of the Staff Handbook and that he had understood that he was charged with knowledge of the contents thereof, including the following introduction to the handbook:
“This Handbook and other statements of the University’s policy are prepared for informational purposes only and do not constitute a contract between the University and its employees, nor are they covenants, and should not be construed as such. The policies of the University may be changed or amended at any time, with or without notice. Unless dictated otherwise by statute or by virtue of being a tenured member of the faculty, employment by the University is not for a definite term and may be terminated by the University or employee at any time, for any reason, unless otherwise agreed. No supervisor or representative of the University, except for the President, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement inconsistent with this acknowledgment. If any agreement is made which is inconsistent with this acknowledgment, to be valid, any such agreement must be in writing, designated as an employment agreement, and signed by the President.”
In 2006, Porter was promoted to the position of interim director (chief) of public safety; in 2010, he was promoted to chief of police. According to Johnson, Porter did not at any time during his employment with the University have an agreement that he would be employed for a specified period of time, nor did the University provide him with any documentation indicating that he was considered a “contract” employee. The personnel-action form reflecting his dismissal from employment stated that “Alabama A & M employees are at-will unless designated otherwise in writing.”
Johnson stated that, to the best of her knowledge, the University had never issued Porter a Faculty and Administrative-Staff Handbook because, she said, the University considered Porter’s position to be governed by the Staff Handbook. She *1234 stated, however, that both handbooks contained many of the same policies and procedures. For example, the foreword to the Faculty and Administrative-Staff Handbook states that
“[t]his manual is not intended to constitute or be part of an employment contract between the employee and the University, nor is anything contained in this manual a covenant and should not be construed as such,”
and provides that “all details, policies, and procedures that are covered are subject to change, as the University deems appropriate, in its sole and exclusive discretion.” Further, like the Staff Handbook, the Faculty and Administrative-Staff Handbook states that the president “has the authority ... to remove any such instructors, officers, staff, or other employees.” Finally, § 5.3 of the Faculty and Administrative-Staff Handbook states that “[ajdmin-istrative/professional personnel serve the University as employees-at-will” and that “[tjenure is reserved for faculty positions.”
On August 17, 2011, the circuit court entered a summary judgment in favor of the University parties without specifying the grounds on which it based that judgment.

Standard of Review

Appellate review of a summary judgment is de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see § 12-21-12(d), Ala.Code 1975.

Discussion

I. Whether the declaratory relief sought by Bowers and Porter with respect to § 16-4-9-23, and by Porter with respect to § 16-49-4(a), was barred by § 14
Before it was amended by Ala. Acts 2011, Act. No. 657 (effective June 9, 2011), § 16-49-23 provided:
“The board of trustees has the power to organize the university by appointing a president, whose salary shall be fixed by the board, and by employing a corps of instructors, who shall be nominated to the board in writing by the president and who shall be styled the faculty of the university and such other instructors and officers as the interests of the university may require; and to remove any such instructors or other officers, and to fix their salaries or compensation and increase or reduce the same at its discretion; to regulate, alter or modify the government of the university, as it may deem advisable; to prescribe courses of instruction, rates of tuition and fees; to confer such academic and honorary degrees as are usually conferred by institutions of similar character; and to do whatever else it may deem best for promoting the interest of the university.”
(Emphasis added.) Section 16-49-4(a) provides, in pertinent part:
*1235 “The President of Alabama Agricultural and Mechanical University, with the approval of the board of trustees, is hereby authorized to appoint and employ suitable persons to act as police officers to keep off intruders and prevent trespass upon and damage to the property and grounds of the university.”
(Emphasis added.) In the circuit court, Bowers and Porter sought judgments declaring that § 16-49-23 grants the Board the exclusive, nondelegable authority to hire and fire all employees of the University; declaring that their dismissals violated § 16-49-23 because those dismissals were not approved by the Board; declaring that they were entitled to reinstatement; and declaring that they were entitled to be paid the wages and benefits lost as a result of their dismissals. Porter also sought the same declaratory relief with respect to the alleged violation of § 16-49-4(a).
The University parties asserted that the declaratory relief sought by Bowers and Porter was barred by § 14. It is trae that “actions against officers, trustees, and employees of state universities in their official capacities are ... barred by § 14,” Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 873 (Ala.2004), and that, insofar as the claims asserted by Bowers and Porter sought lost wages and benefits, those claims are absolutely barred. “ ‘Because of the sovereign immunity clause, the courts of this state are without jurisdiction to entertain a suit seeking damages, including back pay, ... against the state- [A plaintiffs] remedy, if any, is with the Board of Adjustment.’ ” Jones, 895 So.2d at 873 (quoting Vaughan v. Sibley, 709 So.2d 482, 486 (Ala.Civ.App.1997)).
Bowers and Porter point out that our supreme court has recognized that
“certain categories of actions do not come within the prohibition of § 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; and (4) actions brought under the Declaratory Judgment Act seeking construction of a statute and its application in a given situation.”
Taylor v. Troy State Univ., 437 So.2d 472, 474 (Ala.1983) (emphasis added). They argue that a judgment declaring that the termination of their employment without approval by the Board violated § 16-19-23 and § 16-49-4(a) is “exactly the type of claim permitted under the declaratory-judgment exception” to § 14 immunity. The University parties disagree. Citing Liberty National Life Insurance Co. v. University of Alabama Health Services Foundation, P.C., 881 So.2d 1013 (Ala.2003), they contend that declaratory relief was barred by § 14 because §§ 16-49-23 and 16-49-4(a) do not evidence a legislative intent to provide Bowers and Porter with a private cause of action for violation of those statutes.
In Liberty National, an insurer that issued supplemental cancer policies that paid policyholders for their “medical expenses” incident to the treatment of cancer, irrespective of payments made by other insurance or primary-payment sources such as Medicare, sued a state hospital. The insurer alleged that the hospital’s billing statements to patients who were also the insurer’s policyholders contained charges for services that exceeded the amounts the hospital had agreed to accept from third-party payors as full payment for those services. The insurer sought, among other things, a judgment declaring that the hospital’s billing practice violated § 22-21-7, Ala.Code 1975, a statute that, in subsection (b), requires hospitals to pro *1236 vide patients with itemized statements of “charges or expenses incurred by the patient.” Section 22-21-7(e), Ala.Code 1975, authorizes “[t]he Attorney General [to] maintain an action in the name of the state for an injunction to restrain” practices in violation of the statute. Our supreme court held that, because the statute “expressly reserve[s] to the attorney general a cause of action for ... violations” of its billing provisions, 881 So.2d at 1026, the statute “neither creates nor implies a private cause of action [for the insurer], and the exceptions to the doctrine of sovereign immunity do not come into play,” 881 So.2d at 1028 n. 8. We conclude that Liberty National is distinguishable because the statute at issue in that case specifically excluded the insurer as a party who could seek equitable relief under the statute.
We agree with Bowers and Porter that part of the declaratory relief they requested was not barred by § 14 and that only that portion of their request for declaratory relief that implicated the payment of money from the State treasury violated § 14. See Jones, 895 So.2d at 874 (citing Matthews v. Alabama Agric. & Mech. Univ., 716 So.2d 1272, 1281-82 (Ala.Civ.App.1998), as standing for the proposition that, “in an action against the University by a former employee, ‘declaratory and injunctive relief, including reinstatement’ would be available to the employee upon a determination that a contract existed and that the University breached it, but claims for retrospective relief in the form of ‘compensatory damages for mental distress or back pay and cost-of-living raises’ were barred by sovereign immunity”).
“ ‘[T]he purpose of the so-called “exception” to § 14 allowing declaratory-judgment actions is to give direction to State officers. Consistent with the other “exceptions” to § 14 immunity, we hold that only State officers named in their official capacity — and not State agencies — may be defendants in such proceedings.’ ”
Off Campus Coll. Bookstore, Inc. v. University of Alabama in Huntsville, 25 So.3d 423, 426 (Ala.2009) (quoting Alabama Dep’t of Transp. v. Harbert Int'l, Inc., 990 So.2d 831, 841 (Ala.2008)).
II. Whether § 16-19-23 or § 16-I9-i(a) grant the Board the exclusive, nondelega-ble authority to hire and fire employees
A. Section 16-19-23: Bowers and Porter contend that § 16-49-23 required their dismissals to be approved by the Board. Further, they contend that the 2011 amendment of § 16-49-23 strengthens their position that the Board did not have the power to delegate to the president its authority to hire and fire employees under the version of the statute that was in effect at the time they were dismissed from their employment. As amended effective June 9, 2011, § 16-49-23 provides:
“The board shall not engage in activity that interferes with the day-to-day operation of the university. The primary responsibility of the board of trustees is to set policy for the university and prescribe rates of tuition and fees. The board also has the power to organize the university by appointing a president, whose salary shall be fixed by the board. The president shall appoint a corps of instructors who shall be styled the faculty and such other instructors and officers as the interest of the university may require, remove any instructors or officers, fix their salaries or compensation, and define the authority or duty of such instructors or officers. The president may regulate, alter, and modify the organization of the university, subject to review and concurrence of the board. The president shall prescribe courses of instruction within academic *1237 programs that have been approved by the board. The president may confer academic degrees and such honorary degrees as are usually conferred by institutions of similar character upon the recommendation of the faculty.”
The same arguments that Bowers and Porter now advance were made and rejected by this court in McGlathery v. Alabama Agricultural & Mechanical University, [Ms. 2101017, August 3, 2012] - So.3d - (Ala.Civ.App.2012). In McGlathery, this court affirmed a trial court’s determination that the Board had the power to delegate to the president its authority to dismiss university employees. Our decision was based on the fact that § 16-49-23, as it existed before June 9, 2011,
“did not contain any language prohibiting the board from delegating its power ‘to remove any such instructors or other officers,’ and the language granting the board the power ‘to regulate, alter or modify the government of the university, as it may deem advisable!,]... and to do whatever else it may deem best for promoting the interest of the university,’ is broad enough to include the power to delegate its authority ‘to remove any such instructors or other officers.’ ”
— So.3d at -. This court held that the June 9, 2011 amendment
“granted the president some of the powers that its predecessor had granted to the board; however, it contains no language indicating that its predecessor prohibited the board from delegating its power to dismiss university employees. Therefore, we find no merit in McGlath-ery’s argument that the June 9, 2011, amendment indicates that the board did not have the power to delegate its power to dismiss university employees before June 9, 2011.”
— So.3d at -. In the present case, the affidavit testimony of Board member Velma Tribue that the Board had delegated to the president its authority to hire and fire employees was uncontested. In addition, both handbooks state that the Board had delegated to the president the authority to remove or terminate the employment of instructors, officers, staff, and other employees. See Staff Handbook at § 2.3.1; Faculty and Administrative Handbook at § 2.2.1. Accordingly, we conclude that the declaratory relief sought by Bowers and Porter with respect to § 16-49-23, while not barred by § 14, was due to be denied on the merits.
B. Porter’s claims with respect to § 16-J>9-i(a): Initially, we note that, unlike § 16-49-23, which specifically addresses the authority both to employ and to remove university employees, § 16^9-4(a) specifically addresses only the authority to employ university police officers; it is silent with regard to the authority to remove university police officers. Nevertheless, assuming, without deciding, that the authority to employ police officers necessarily includes the authority to remove such officers, it is apparent that the Board’s broad delegation of authority to the president — -as evidenced by Article IV, § 1 of the Board’s bylaws and the statements in both employee handbooks — includes the authority to hire and fire police officers. Accordingly, we conclude that the declaratory relief sought by Porter with respect to § 16-49-4(a), while not barred by § 14, was due to be denied on the merits.
III. Whether there existed any genuine issue of material fact with respect to Porter’s claims based on the alleged violation of policies and procedures set out in the employee handbooks
Porter’s complaint did not allege that he had been employed pursuant to a contract for a specified period of time, and *1238 the evidence submitted by the University parties indicated that no such contract existed. “ ‘The bedrock principle of Alabama employment law is that, in the absence of a contract providing otherwise, employment in this state is at-will, terminable at the will of either party. Under this doctrine, an employee may be discharged for any reason, good or bad, or even for no reason at all.’ ” Johnson v. City of Marion, 743 So.2d 481, 483 (Ala.Civ.App.1999) (quoting Ex parte Amoco Fabrics & Fiber Co., 729 So.2d 336, 339 (Ala.1998)).
Porter and the University parties differ with respect to whether Porter was an administrative-staff employee who was subject to the Faculty and Administrative-Staff Handbook or whether he was a staff employee who was subject to the Staff Handbook. Assuming, without deciding, that Porter is correct and that the Faculty and Administrative-Staff Handbook governed the terms of his employment, the evidence was undisputed that even “[a]d-ministrative/professional personnel [other than faculty] serve the University as employees-at-will.” Therefore, Porter’s claims for reinstatement, lost wages, and benefits were without merit. See Dykes v. Lane Trucking, Inc., 652 So.2d 248, 250 (Ala.1994) (stating that, when an employee is terminable at will, “there can be no legally compensable injury resulting from the employer’s terminating the employment”).
Porter’s contention that he was entitled to a “grievance hearing” pursuant to the procedure set out in the Faculty and Administrative-Staff Handbook is also without merit. See Hoffman-LaRoche, Inc. v. Campbell, 512 So.2d 725, 734 (Ala.1987). In Hoffman-LaRoche, our supreme court made it clear that
“the provisions of a[n employee] handbook [are not] enforceable against an employer when the handbook at issue expressly statefs] the following: ‘This Handbook and the policies contained herein do not in any way constitute and should not be construed as a contract of employment between the employer and the employee, or a promise of employment.’ ”
The Faculty and Administrative-Staff Handbook upon which Porter relies states that it is “not intended to constitute or be part of an employment contract between the employee and the University, nor is anything contained in this manual a covenant and should not be construed as such.” The handbook also states that “all details, policies, and procedures that are covered are subject to change, as the University deems appropriate, in its sole and exclusive discretion.” Cf. Stinson v. American Sterilizer Co., 570 So.2d 618 (Ala.1990) (reasoning that, when the employer reserves the right to deviate from the policies set out in an employee handbook, the employee cannot reasonably conclude that the employer is committed to adhere to the policy stated in the handbook).

Conclusion

The claims for declaratory relief by Bowers and Porter with respect to § 16-49-23, and the claim by Porter with respect to § 16-49-4 — that those statutes granted the Board the exclusive, nondele-gable authority to hire and fire University employees; that the dismissal of the employees violated the statutes; and that the employees were entitled to reinstatement — although not barred by § 14, were correctly denied on the merits. All claims by Bowers and Porter for lost wages and benefits, irrespective of how such claims were delineated, were absolutely barred by § 14. Porter’s claims based on the employee handbook were correctly denied because Porter failed to submit any evidence *1239 indicating that he was not an employee at-will.
The judgments of the Madison Circuit Court are affirmed.
2101233 — AFFIRMED.
2110403 — AFFIRMED.
THOMPSON, P.J, and BRYAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The Board members are D. Thomason Bell, Luden B. Blankenship, Raymond Burse, Norman D. Hill, Odysseus M. Lanier, James Montgomery, Chassidy Privett, Christopher Robinson, Andre Taylor, Velma Trihue, and Jerome Williams.