[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13131

Non-Argument Calendar

_____

MOHAMED A. SEIF,
Ph.D.,

Plaintiff-Appellee,

*versus*

ALABAMA AGRICULTURAL &
MECHANICAL UNIVERSITY, et al.,

Defendants,

CASSANDRA TARVER-ROSS,
Director of Human Resources for Alabama
A & M University, in her official and individual

2                    Opinion of the Court                    22-13131

capacities,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:15-cv-02374-MHH

_____

Before LUCK, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Alabama Agricultural and Mechanical University ("Alabama A&M") professor Mohamed Seif sued the university's human resources director, Cassandra Tarver-Ross, under 42 U.S.C. section 1983. Seif claims that Tarver-Ross denied him procedural due process by closing his internal grievance, which requested a salary increase.

Tarver-Ross appeals the district court's denial of her summary judgment motion asserting qualified immunity. Because we conclude she is entitled to qualified immunity, we reverse and remand for the district court to enter summary judgment for Tarver-Ross on the procedural due process claim.

## FACTUAL BACKGROUND

Seif immigrated to the United States from Egypt.  He joined Alabama A&M's faculty in 2002 as an associate professor in its college of engineering.  He became a tenured professor in 2006.

A faculty handbook outlines Alabama A&M's expectations for its faculty.  But "it is not a contract."  Instead, the handbook "is a collection of polices and procedures that govern action uniquely pertaining to . . . faculty."  The handbook "caution[s]" that its policies "are subject to change . . . when the [u]niversity deems appropriate in its sole and exclusive discretion."  The handbook requires that faculty sign an acknowledgment stating that the handbook's "policies and procedures are subject to change and do not constitute a contractual agreement."

The handbook identifies department chairpersons as being the "chief administrator[s]" of their respective departments.  The chairs must "report[] to the [d]ean of his/her respective [s]chool" and "serve[] in [an] at-will position . . . at the pleasure of the [p]resident."  In 2007, soon after Seif obtained tenure, Alabama A&M appointed Seif to be the mechanical engineering department's acting chair.  When Seif became an acting chair, Alabama A&M paid Seif $14,400, through $1,200 monthly installments, on top of his base faculty salary.  In 2008, the university made Seif the mechanical engineering department's permanent chair and continued paying Seif the $14,400 of annual supplemental compensation.

Soon after he became permanent chair, Seif wrote a memo to the interim provost and vice president of academic affairs,

claiming that the university miscalculated his base salary. Seif explained that the university based his salary on two years of employment at Alabama A&M, when it should have paid him based on five years. The interim provost disagreed and notified Seif that his salary would not be adjusted. The university did increase his base salary by five percent about a month later as part of a blanket increase for all chairs.

In 2011, Alabama A&M merged its mechanical and civil engineering programs into one new department. Seif became the new department's first chair and requested another increase of his base salary. Seif wrote a memo to the new provost and vice president for academic affairs, Daniel Wims, saying that he was the lowest paid chair despite other chairs being new hires and associate professors. Two of Seif's colleagues wrote memos to Wims supporting Seif's request. Wims denied the request, saying it wasn't feasible to adjust salaries on a case-by-case basis at that time.

Seif filed a "Faculty Grievance/Complaint Form" against Wims with Alabama A&M's Department of Human Resources. Seif's grievance alleged that Wims discriminated by denying Seif equal pay relative to other department chairs. He requested "corrective action" of "[e]qual pay of $118,404.00."

A three-member faculty committee reviewed Seif's grievance and deemed it "grievable" under Alabama A&M's faculty handbook. Tarver-Ross, director of the Office of Human Resources, wrote Seif a letter notifying Seif that the committee found

that the "grievance [wa]s grievable" and explaining the grievance process's next steps.

Ten days later, Tarver-Ross wrote Seif a second letter saying that "[u]nfortunately, after further review," Seif's grievance was not grievable. Tarver-Ross cited the "Grievance Procedures, Eligibility" provision of the faculty handbook, which provides:

> **Eligibility:** Eligibility to participate in the grievance process is limited to [u]niversity faculty or those who were faculty when the situation arose. If a faculty member is employed by both a related foundation, an institute or an entity associated with Alabama A&M University for which Alabama A&M University serves as the fiscal agent . . . or an entity outside of the [u]niversity . . . for which the faculty member has a split-appointment, he/she is required first to follow the procedures as outlined by the other entity before beginning the grievance process at the University. Even then, the faculty member can only enter into the [u]niversity grievance process if the situation concerns the faculty portion of their appointment and then only to the extent and only for those issues related to the faculty assignment may be considered in this grievance process.

Tarver-Ross explained that because Seif's grievance claimed other *chairs* had higher base salaries, his grievance related to his chair assignment—not his "faculty assignment." The letter told Seif that his grievance was thus "considered closed."

Seif then filed a discrimination charge with the Equal Employment Opportunity Commission, alleging Alabama A&M paid him less than other chairs based on his Egyptian national origin. The EEOC closed its file on Seif's charge without finding any statutory violations by Alabama A&M.

## PROCEDURAL HISTORY

After the EEOC closed its file, Seif filed this case against Alabama A&M's board of trustees, Alabama A&M's president, Wims, and Tarver-Ross. His complaint alleged race and national origin discrimination claims against the board, president, and Wims under Title VII and 42 U.S.C. section 1981. The complaint also alleged a procedural due process claim against the president, Wims, and Tarver-Ross under section 1983, alleging specifically Seif "maintained a property right in the grievance and grievance process."

The district court dismissed Seif's claims to the extent he sued the individual defendants in their official capacities, which left only individual capacity claims. All defendants eventually moved for summary judgment on the remaining claims. Tarver-Ross, for her part, argued Seif had no constitutionally protected property interest in a grievance hearing. And she argued that even if Seif did, she was entitled to qualified immunity because Seif could not show that she violated clearly established law. Seif responded that our decision in *Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012), where we considered a university's expulsion of a student without a

22-13131               Opinion of the Court                    7

hearing as required by university policy, clearly established he was entitled to a grievance hearing.

The district court denied the summary judgment motion as to Tarver-Ross but otherwise granted the motion. As relevant for this appeal, the district court first found that the faculty handbook assured Seif he would be able to grieve a salary-related complaint. Thus, the district court reasoned, Tarver-Ross deprived Seif of a property interest by closing his grievance without any hearing.

The district court then found Tarver-Ross acted within her discretionary authority by closing Seif's grievance, but it agreed with Seif that she violated clearly established law when she did. The district court disagreed with Seif that *Barnes* was a materially similar case to this one. But, the district court reasoned, *Barnes* "established the broad principle that a university, through its internal polices . . . [,] may not assure those subject to the internal policies that they will receive process in a particular situation, only to later reverse course when the interested party seeks access to the process."

This is Tarver-Ross's appeal.[1]

---

[1] Seif has not filed any appellate brief. We "must still determine as best [we] can the merits of the appeal and reverse only if [we] decide[] that the appeal is indeed meritorious." *Pasha v. Gonzales*, 433 F.3d 530, 535 (7th Cir. 2005) (noting the Federal Rules of Appellate Procedure do not require an appellee to file a brief).

## STANDARD OF REVIEW

We review de novo a district court's denial of qualified immunity at summary judgment. *English v. City of Gainesville*, 75 F.4th 1151, 1155 (11th Cir. 2023). We view all evidence "in the light most favorable to the nonmoving party." *Townsend v. Jefferson County*, 601 F.3d 1152, 1157 (11th Cir. 2010) (quoting *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004)); *see also Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000) ("[W]e take the 'facts' in the light most favorable to the plaintiff and determine the legal issue of whether the plaintiff's 'facts', if proven, show that the defendant violated clearly established law.").

## DISCUSSION

"Qualified immunity shields government employees from suit in their individual capacities for discretionary actions they perform while going about their duties." *Brooks v. Miller*, 78 F.4th 1267, 1279 (11th Cir. 2023). The immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). So as long as the official "acted in an objectively reasonable manner," the immunity will apply. *Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("[Qualified immunity] provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").

We apply a burden-shifting framework to determine if an official is entitled to qualified immunity. *Brooks*, 78 F.4th at 1280.

22-13131                Opinion of the Court                9

The official asserting immunity must first "show that [she] was acting within the scope of his discretionary authority." *Id.* If the official does that, the burden shifts to the plaintiff to show that qualified immunity doesn't apply. *Id.* A plaintiff shows the immunity doesn't apply by establishing (1) "the defendant violated a constitutional right" and (2) "the right was 'clearly established.'" *Davis v. Waller*, 44 F.4th 1305, 1312 (11th Cir. 2022) (quoting *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019)).

Tarver-Ross satisfied her initial burden of showing she acted within her discretionary authority by closing Seif's grievance.[2] Seif filed his grievance with the Office of Human Resources and Tarver-Ross was the office's director. That means Seif must show immunity doesn't apply here. *See Brooks*, 78 F.4th at 1280.

A plaintiff shows a procedural due process violation by proving three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1035 (11th Cir. 2022) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). "Property," in this context, "denotes a broad range of interests that are secured by existing rules or understandings." *Barnes*, 669 F.3d at 1303 (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)). Those interests "are not created

---

[2] In the district court, Seif did not dispute that Tarver-Ross satisfied her initial burden. Indeed, citing Tarver-Ross's letter about closing his grievance, he argued that grievances "cannot be processed without the acts of Tarver-Ross."

by the Constitution," *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972), and instead must stem from an "independent source" grounded in state law—such as a statute, contract, or "mutually explicit understanding," *Barnes*, 669 F.3d at 1303 (citations omitted).

We need not decide whether the district court correctly found that Seif's facts, taken as true, actually establish all three elements of a procedural due process claim. In determining whether Seif satisfied his burden, "courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). There are "cases in which a court [can] rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." *Pearson*, 555 U.S. at 239. And this is one of those cases. No clearly established law gave Tarver-Ross "fair warning" that Seif was entitled to grieve his salary dispute. *Corbitt*, 929 F.3d at 1312 ("[T]he 'salient question' is whether the state of the law gave the defendants 'fair warning' that their alleged conduct was unconstitutional." (cleaned up) (quoting *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003))).

A plaintiff can show that the law clearly established a right in three ways. *See Davis*, 44 F.4th at 1312–13. First, a plaintiff can point to "a materially similar case" of the Supreme Court, this court, or the relevant state supreme court holding the challenged conduct is unlawful. *Id.* at 1312 (citation omitted). A materially

similar case does not have to be exactly on point, but it still "must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

Second, a plaintiff can point to a "broader, clearly established principle [that] should control the novel facts of a particular case." *Davis*, 44 F.4th at 1312. Case law must establish the principle "with 'obvious clarity' . . . so that 'every objectively reasonable government official facing the circumstances would know that [her] conduct did violate federal law when [she] acted.'" *Terrell v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002)). "For example, if some authoritative judicial decision decides a case by determining that 'X Conduct' is unconstitutional *without tying* that determination to a particularized set of facts, the decision on 'X Conduct' can be read as having clearly established a constitutional principle." *Vinyard*, 311 F.3d at 1351. Or "put differently, the precise facts surrounding 'X Conduct' are immaterial to the violation." *Id.*

Third, a plaintiff can show the defendant's conduct "so obviously violates the Constitution that prior case law is unnecessary." *Davis*, 44 F.4th at 1313 (cleaned up).

Applying that three-part framework here, Seif failed to satisfy his burden. No materially similar case established Seif was entitled to grieve his salary dispute. That includes our decision in *Barnes*, which Seif cited in the district court. In *Barnes*, a university president created plans to build a new parking deck on campus. 669

F.3d at 1298–99.  The president "'administratively withdrew' (expelled)," without any notice or hearing, a student who protested the project.  *Id.* at 1298, 1300–01.  After the student sued the president for denying due process, we held qualified immunity didn't apply.  *Id.* at 1309.  We first concluded the student had "a property interest in his enrollment," citing how university policies only allowed suspensions or expulsions for cause.  *Id.* at 1303–06.  We then concluded the university's policies, themselves, clearly established the student's right to continued enrollment because it "repeatedly assure[d] . . . students that they will receive due process before being suspended or expelled."  *Id.* at 1307; *see also id.* at 1304 (noting university policy "promise[d]" students they would not be disciplined without cause).

As applied to this case, *Barnes* plainly does not "place[] the . . . constitutional question beyond debate."  *White*, 580 U.S. at 79 (quoting *Mullenix*, 577 U.S. at 12).  The property right at stake in *Barnes* was a college student's "interest in his enrollment."  669 F.3d at 1305.  Unlike *Barnes*, though, this case doesn't involve a student's right to enrollment or a university's authority to expel students.  This case is about whether a faculty member and department chair can grieve a salary dispute under faculty-specific policies.  Seif's complaint alleged that he maintained a property right in the *denied grievance* itself.  Those differences mean *Barnes* is not "'particularized' to the facts of th[is] case."  *White*, 580 U.S. at 79 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Corbitt*, 929 F.3d at 1311–12 ("[O]fficials are not obligated to be creative or imaginative in drawing analogies from previously decided cases . . . ."

(quoting *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011)).  We are aware of no other binding case law that is particularized to the facts here.  So we agree with the district court that no materially similar case established Seif was entitled to grieve his salary dispute.

We part ways, however, with the district court's analysis of whether a "broader, clearly established principle" gave Tarver-Ross fair warning that Seif had a protected property interest.  *Davis*, 44 F.4th at 1312.  The district court found *Barnes* clearly established a broad principle that a university's internal policies cannot promise any person (not just students) process and later reverse course when that person tries to use it.

That principle stretches *Barnes* too broadly.  *Cf. Corbitt*, 929 F.3d at 1316 ("[T]he Supreme Court—with palpable frustration— [has] reiterated 'the longstanding principle that clearly established law should not be defined at a high level of generality.'" (quoting *White*, 580 U.S. at 79)).  *Barnes* did not establish "obvious clarity" that university employees have a property interest in any and all internal dispute processes.  *Terrell*, 668 F.3d at 1256 (quoting *Vinyard*, 311 F.3d at 1351).  Instead, we tied our decision in *Barnes* "to [the] particularized facts" of that case.  *Vinyard*, 311 F.3d at 1351.  The *Barnes* university's internal policies "repeatedly assure[d] . . . students that they will receive due process before being suspended or expelled."  *Barnes*, 669 F.3d at 1307–08.  We said nothing in *Barnes* about university policies as applied to nonstudents, much less anything about university policies governing internal employment dispute procedures.

Even if we held in *Barnes* "that 'X Conduct' is unconstitutional *without tying* that determination to a particularized set of facts," *Vinyard*, 311 F.3d at 1351, this case doesn't involve X Conduct. The university policies in *Barnes* "made . . . assurances" that "students . . . w[ould] receive due process," and then the university broke its promise. 669 F.3d at 1307. There is no evidence of a broken promise here. The undisputed facts show Alabama A&M did not assure or "promise[]" Seif that he would be entitled to file a grievance. *Id.* at 1304; *cf. id.* at 1303 (property interests must stem from an independent source such as a contract or "mutually explicit understanding" (citations omitted)). The handbook expressly "caution[ed]" faculty members that its procedures were "subject to change . . . when the [u]niversity deems appropriate in its sole and exclusive discretion." And it required that faculty acknowledge that the handbook was "not a contract" of any kind. So even if Seif's salary dispute was grievable under the handbook when he first filed it, Alabama A&M retained discretion to deviate from its policy unlike the university in *Barnes*.

That fact difference between this case and *Barnes* is not "immaterial." *Vinyard*, 311 F.3d at 1351. No Alabama case law, statute, or university regulation clearly entitled Seif to file a grievance without Alabama A&M "revers[ing] course" on its handbook. *Barnes*, 669 F.3d at 1307. Under Alabama law, an employee handbook is generally not a contract enforceable against one's employer if it "contains express disclaimers reserving the [employer]'s right to deviate from all the policies stated in that handbook." *Stinson v. Am. Sterilizer Co.*, 570 So. 2d 618, 621–22 (Ala. 1990); *see also*

*Hoffman-LaRoche, Inc. v. Campbell*, 512 So. 2d 725, 734 (Ala. 2012). In *Porter v. Hugine*, for example, the Alabama Court of Civil Appeals rejected an Alabama A&M employee's claim "that he was entitled to a 'grievance hearing'" under an older version of the faculty handbook because Alabama A&M reserved discretion to deviate from its handbook policies.  101 So. 3d 1228, 1237–38 (Ala. Civ. App. 2012).  *Porter* is not a decision of the Alabama Supreme Court, to be sure, but "non-binding persuasive authority can . . . indicate that a particular constitutional right is not clearly established." *Corbitt*, 929 F.3d at 1319 n.14.  *Porter* does that here.

That leaves the third method of clearly establishing the law—showing that the defendant's conduct "so obviously violates the Constitution that prior case law is unnecessary." *Davis*, 44 F.4th at 1313 (cleaned up).  Seif did not show that closing a university employee's internal grievance is "so egregious" such that it obviously violates the Constitution.  *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1292 (11th Cir. 2009).

Because we cannot say Tarver-Ross acted in an objectively unreasonable manner, she is entitled to qualified immunity.  *Malley*, 475 U.S. at 341.

## CONCLUSION

We reverse the part of the district court's order denying qualified immunity, and we remand with instructions to enter judgment for Tarver-Ross on Seif's procedural due process claim.

**REVERSED and REMANDED.**