[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14504

_____

DIANE N. RESNICK,
PERRY A. RESNICK,
AMERICAN WELLNESS AND HEALTH CENTERS, INC.,
JONATHAN S. RESNICK,

                                        Plaintiffs-Appellants,

*versus*

KRUNCHCASH, LLC,
JEFFREY HACKMAN,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-cv-80163-WPD

————————————

Before NEWSOM, MARCUS, Circuit Judges, and STORY, District Judge.[*]

MARCUS, Circuit Judge, delivered the opinion of the Court.

NEWSOM, Circuit Judge, filed a concurring opinion, in which MARCUS, Circuit Judge, and STORY, District Judge, joined.


MARCUS, Circuit Judge:

This case arises from a loan deal gone awry. Plaintiffs Jonathan S. Resnick, Diane Resnick, Perry A. Resnick, The Law Offices of Jonathan S. Resnick, LLC, The Law Office of Perry A. Resnick, LLC (collectively, the "Resnicks"), and American Wellness and Health Centers, Inc. ("American Wellness") appeal the district court's dismissal of their constitutional and state law claims against Defendants KrunchCash, LLC ("KrunchCash") and Jeffrey Hackman ("Hackman") for lack of subject matter jurisdiction.

Plaintiffs claim that Defendants violated their right to due process of law by freezing their assets in Maryland, obtaining writs

————————————

[*] Honorable Richard W. Story, United States District Judge, for the Northern District of Georgia, sitting by designation.

of garnishment based on Maryland law without providing notice and an opportunity to be heard.  They also allege violations of state law, including a charge of usury, breach of contract, and tortious interference.  The district court concluded, however, that it lacked subject matter jurisdiction because, in its view, Plaintiffs' federal claim was so utterly frivolous that it robbed the court of federal question jurisdiction.

We disagree.  Even if Plaintiffs' federal claim ultimately fails on the merits, the due process claim was not so wholly insubstantial and frivolous as to deprive the district court of the power to adjudicate.  We therefore reverse and remand for further proceedings consistent with this opinion.

## I.

### A.

The discrete jurisdictional dispute before us begins with a convoluted factual and procedural backdrop.  Jonathan and Perry Resnick are legal practitioners who reside in Florida and represent clients in personal-injury cases.  Diane Resnick is Jonathan's wife, and Perry is their son.  American Wellness is a medical clinic that treats patients injured in auto accidents.  KrunchCash is a company owned and run by Jeffrey Hackman, who resides in Florida.

In connection with their professional practices, Plaintiffs entered into five "Funding Agreements" and two "Guaranty and Security Agreements" (the "Guaranty Agreements") -- all seven of

which are referred to as "Loan Agreements"[1] with KrunchCash. KrunchCash provided cash advances to Plaintiffs in return for a significant "use fee," or interest rate. The fee was four percent of the loan per month. The Funding Agreements also required the Resnicks to pay at least six months' worth of the monthly use fee (or 24 percent of the loan), and they required American Wellness to pay at least five months (20 percent of the loan). Thus, each Funding Agreement charged a maximum rate of 48 percent per annum.

All the Loan Agreements contemplated confessions of judgment "without notice" to Plaintiffs, which Defendants could exercise "in any court" and "IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS [KRUNCHCASH] SHALL DEEM NECESSARY." In addition, Plaintiffs agreed to the following language in four separate Funding Agreements:

> THIS AGREEMENT CONTAINS A WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST LAW FIRM. IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT, LAW FIRM HEREBY *KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, AND ON THE ADVICE OF SEPARATE COUNSEL, UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS LAW FIRM HAS*

---

[1] The Resnicks maintain that their signatures were forged on the Guaranty Agreements, so whether those Agreements even apply also remains contested. *See* Am. Compl. at 15 n.12 ("Upon information and belief, the Resnicks' signatures on the Guaranties were forged. Plaintiffs will be further developing this issue and will be pursuing an additional claim against Defendants and their co-conspirators.").

> OR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING UNDER THE RESPECTIVE CONSTITUTIONS AND LAWS OF THE UNITED STATES, THE STATE OF FLORIDA, AND ANY OTHER STATE, PRIOR TO ENTRY OF JUDGMENT AND SEIZURE OF LAW FIRM'S PROPERTY.

(Emphasis added).

KrunchCash was also given the right, "without [giving] notice" or "warning" to Plaintiffs, to "empower any attorney of any court of record" to obtain "confess[ed] judgment[s] . . . in favor of [KrunchCash] for any and all amounts payable to [KrunchCash]." The Guaranty Agreements also provide that the Resnicks "agree[] that its guaranty is irrevocable, continuing, absolute and unconditional and shall not be discharged or impaired, and [the Resnicks] hereby irrevocably waive[] any defenses to enforcement [they] may have now or in the future."

Over time, the Resnicks' and KrunchCash's relationship broke down. Plaintiffs claim that KrunchCash "wrangle[d] increasing control over the computer systems that the Resnicks used to run their law firms" and "extort[ed]" them into making payments under the Funding Agreements. The Plaintiffs also claim that the Defendants blocked their access to their clients' records. In response, the Resnicks sued KrunchCash on July 18, 2019, in Florida's Fifteenth Judicial Circuit in Palm Beach County and obtained a temporary injunction, which required KrunchCash to relinquish control over the Resnicks' computer systems. KrunchCash responded by filing an action in the same court to recover $13.1 million from Plaintiffs for breaching the Loan Agreements.

Purportedly without notifying Plaintiffs or the Florida Circuit Court, KrunchCash filed seven complaints for judgment by confession in the Circuit Court for Baltimore County, Maryland against Plaintiffs (the "Maryland Actions") under Maryland Rule 2-611.[2] Maryland Rule 2-611 provides:

> **(b) Action by Court**. If the court determines that (1) the complaint complies with the [procedural] requirements of section (a) of this Rule and (2) the pleadings and papers demonstrate a factual and legal basis for entitlement to a confessed judgment, the court shall direct the clerk to enter the judgment. Otherwise, it shall dismiss the complaint.

Md. R. Civ. P. Cir. Ct. 2-611. Because they purportedly did not receive notice of these complaints, Plaintiffs did not initially appear in the Maryland Actions.

The Maryland Circuit Court entered judgment for KrunchCash on December 4, 2019, and KrunchCash, in turn, sought and obtained writs of garnishment in aid of the enforcement of the judgment under Maryland Rules 2-645 and 2-645.1. Plaintiffs moved to vacate those writs in the Maryland Circuit Court in

---

[2] The seven cases pending in Baltimore County are: *KrunchCash, LLC v. Diane N. Resnick,* C-03-CV-004422 (Md. Cir. Ct. November 26, 2019); *KrunchCash, LLC v. Am. Wellness and Health Ctrs., Inc.,* C-03-CV-004423 (Md. Cir. Ct. November 26, 2019); *KrunchCash, LLC v. Perry Resnick,* C-03-CV-004425 (Md. Cir. Ct. November 26, 2019); and *KrunchCash, LLC v. The Law Offices of Jonathan Resnick,* C-03-CV-004427 (Md. Cir. Ct. November 26, 2019)).

December 2019.[3]    Plaintiffs alleged that these writs allowed KrunchCash to freeze the personal and business accounts of the Resnicks, and that their accounts remained frozen, at least as of the operative date of their pleading (February 28, 2020).

On March 2, 2020, the Maryland Circuit Court vacated all confessed judgments and writs of garnishments, although it appointed a receiver over the properties and businesses of Plaintiffs The Law Offices of Jonathan S. Resnick, LLC and The Law Offices of Perry A. Resnick, LLC, as well as non-party The Law Offices of Jonathan S. Resnick, PLLC. *See KrunchCash, LLC v. The Law Offices of Jonathan Resnick,* C-03-CV-004427 (Md. Cir. Ct. March 17, 2020). The Maryland Actions are ongoing.

**B.**

While the Maryland Actions continued, Plaintiffs sued KrunchCash and Hackman in the Southern District of Florida on February 4, 2020. In their Amended Complaint, Plaintiffs allege, among other state law claims, that the Funding Agreements between Plaintiffs and Defendants are usurious under Fla. Stat. §§ 687.02 *et seq.*, and that the Maryland rules used to obtain writs of garnishment against Plaintiffs' assets, without notice and the opportunity to be heard, violated their rights to due process under the Fourteenth Amendment to the U.S. Constitution. Plaintiffs' due

---

[3] *KrunchCash, LLC v. Diane N. Resnick*, C-03-CV-004422 (Md. Cir. Ct. December 30, 2019); KrunchCash, LLC v. Am. Wellness and Health Ctrs., Inc., C-03-CV- 004423 (Md. Cir. Ct. December 31, 2019); *KrunchCash, LLC v. Perry Resnick,* C-03-CV-004425 (Md. Cir. Ct. December 31, 2019); *KrunchCash, LLC v. The Law Offices of Jonathan Resnick,* C-03-CV-004427 (Md. Cir. Ct. December 30, 2019).

process claim was brought under 42 U.S.C. § 1983. They assert that the district court has subject matter jurisdiction under its federal question jurisdiction (28 U.S.C. § 1331), and their state law claims of usury, breach of contract, and tortious interference all fall under the court's supplemental jurisdiction. 28 U.S.C. § 1367(a).

Defendants responded by moving to dismiss, claiming, among other things, that the district court lacked subject matter jurisdiction. Defendants also moved to stay the action based on the abstention doctrine the Supreme Court articulated in *Colorado River Water Conservation District v. United States*. *See* 424 U.S. 800, 817 (1976).

The district court agreed and dismissed Plaintiffs' Amended Complaint for lack of subject matter jurisdiction because it concluded that Plaintiffs' sole federal claim, arising under the Due Process Clause, was so frivolous that it denuded the court of subject matter jurisdiction. The district court reached this conclusion for three reasons. First, the court questioned whether Plaintiffs were even deprived of a constitutionally protected property interest because their assets were only temporarily frozen. Second, it concluded that Plaintiffs' claim of state action was "questionable at best." Finally, the court determined that the Supreme Court's decision in *D.H. Overmyer v. Frick*, 405 U.S. 174 (1972), foreclosed Plaintiffs' claim that they were deprived of a constitutionally sufficient process. In the absence of any federal claim, the court explained that it could not exercise supplemental jurisdiction over Plaintiffs' state law claims. The district court also briefly touched on the abstention issue, but never explicitly ruled on it.

Plaintiffs timely appealed.

## II.

The sole issue before us is whether the district court erred in concluding that it lacked subject matter jurisdiction over Plaintiffs' claims. We review the district court's ruling on a motion to dismiss for lack of subject matter jurisdiction *de novo*, "accepting the [ ] allegations as true and construing them in the light most favorable to [the plaintiff]." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1301–02 (11th Cir. 2020).

We begin with the basics. The statutory grant of federal question jurisdiction provides the federal district courts with jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1251 (11th Cir. 2011) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908)). Furthermore, "the district court 'shall have' supplemental jurisdiction over both additional claims and additional parties when those claims 'are so related to claims in the action within [the] original jurisdiction [of the court] that they form part of the same case or controversy under Article III of the United States Constitution.'" *Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1563 (11th Cir. 1994) (quoting 28 U.S.C. § 1367(a)).

KrunchCash and Hackman do not dispute that if the district court has federal question jurisdiction, the court would also have supplemental jurisdiction over the state law claims. They argue instead that Plaintiffs' due process claim does not "aris[e] under federal law" because, based on the facts alleged and binding precedent,

the federal claim is so frivolous and insubstantial that it deprives the court of subject matter jurisdiction.[4]

"In determining whether the district court ha[s] subject matter jurisdiction, we respect the important distinction between the lack of subject matter jurisdiction and the failure to state a claim upon which relief can be granted." *Blue Cross & Blue Shield v. Sanders*, 138 F.3d 1347, 1351–52 (11th Cir. 1998). Seventy-five years ago, the Supreme Court explored this distinction in *Bell v. Hood. See* 327 U.S. 678 (1946). The Court explained that a complaint should not be dismissed for lack of subject matter jurisdiction if "the right of the [plaintiffs] to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." *Id.* at 685. We explained this distinction in *Blue Cross & Blue Shield v. Sanders*:

> A federal court may dismiss a federal question claim for lack of subject matter jurisdiction only if: (1) the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction; or (2) such a claim is wholly insubstantial and frivolous.

138 F.3d at 1352 (quoting *Bell*, 327 U.S. at 682–83) (quotation marks omitted).

As *Sanders* suggests, the category of claims that are "wholly insubstantial and frivolous" is exceedingly narrow. *See Delta Coal Program v. Libman*, 743 F.2d 852, 855 n. 4 (11th Cir. 1984)

---

[4] They do not, however, argue in the alternative that the federal claim was immaterial and made solely for the purpose of obtaining jurisdiction.

(explaining that "*Bell* limited such dismissals to occasions when the federal claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous'"); *Davis v. Wells Fargo*, 824 F.3d 333, 349–50 (3rd Cir. 2016) (concluding that "Rule 12(b)(1) must not be expanded beyond its proper purpose," and that *Bell* applies "in only narrow categories of cases"); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 443 (6th Cir. 2012) (explaining that the "rare exception created by *Bell*" is "quite narrow and ordinarily reserved for extremely weak claims").[5]  To strip a district court of subject matter jurisdiction, a plaintiff's federal claim must have "no plausible foundation, or [ ] the court [must] conclude[] that a prior Supreme Court decision clearly forecloses the claim."  *Barnett v. Bailey*, 956 F.2d 1036, 1041 (11th Cir. 1992) (quoting *Olivares v. Martin*, 555 F.2d 1192, 1195 (5th Cir. 1977)); *see also McGinnis v. Ingram Equip. Co.*, 918 F.2d 1491, 1494 (11th Cir. 1990) (*en banc*) (quotation marks and citations omitted) ("The test of federal jurisdiction is not whether the cause of action is one on which the claimant can recover. Rather the test is whether the cause of action alleged is so patently without merit as to justify . . . the court's dismissal for want of jurisdiction.").

We return then to Plaintiffs' due process claim.  To bring a due process claim under section 1983, a plaintiff must establish "(1) a deprivation of a constitutionally-protected liberty or

---

[5] "*Bell* has been referred to as 'a legal landmine' and 'one of the most cryptic [cases] in the recent history of [the] [Supreme] Court's jurisprudence.'" *Marine Coatings of Ala., Inc. v. United States*, 792 F.2d 1565, 1569 n. 7 (11th Cir. 1986) (quoting *Yazoo Cnty. Indus. Dev. Corp. v. Suthoff*, 454 U.S. 1157, 1159 (1982) (Rehnquist, J., dissenting from denial of cert.)).

property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). In order to deprive the district court of federal question jurisdiction over this claim, the Defendants must show that Plaintiffs' factual or legal support for at least one of these elements lacks "plausible foundation," thus rendering the claim "wholly insubstantial and frivolous." *See Sanders*, 138 F.3d at 1352 (quoting *Bell*, 327 U.S. at 682–83) (quotation marks omitted). We discuss each element in turn.

### A.

Plaintiffs first argue they were deprived of their constitutionally protected property interest in their personal and business bank accounts when KrunchCash and Hackman, using Maryland's garnishment procedures, temporarily froze their funds. First, Plaintiffs assert that their interest in these funds and in the funds of their clients is constitutionally protected. Second, they say that even a temporary or partial deprivation of property without proper notice or a hearing violates due process.

Plaintiffs have, at the bare minimum, asserted a colorable argument that they were deprived of a constitutionally protected property interest. To begin with, Plaintiffs have a constitutionally protected property interest in their own funds and in their clients' funds. *See Buxton v. Plant City*, 871 F.2d 1037, 1042 (11th Cir. 1989) ("Property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money."). The Supreme Court has made clear that a temporary deprivation of a constitutionally protected property interest is enough to support a due process claim. *Conn. v. Doehr*, 501 U.S. 1, 12 (1991) ("[E]ven the temporary or partial impairments to

property rights that such encumbrances entail are sufficient to merit due process protection."); *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972) ("The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause."); *N. Ga. Finishing v. Di-Chem, Inc.*, 419 U.S. 601, 606 (1975) (explaining that a state garnishment statute was vulnerable to constitutional attack under the Fourteenth Amendment because the plaintiff's "property[] was impounded and, absent a bond, put totally beyond use during the pendency of the litigation on the alleged debt").

Defendants do not quibble with Plaintiffs' claim that they have a protected interest in their own accounts. Instead, Defendants say that a temporary freeze of those accounts cannot plausibly amount to a deprivation of that interest. Specifically, Defendants argue that the cases on which Plaintiffs rely -- *Connecticut v. Doehr*, *Fuentes v. Shevin*, and *Northern Georgia Finishing v. Di-Chem, Incorporated* -- are all inapposite because none of them involved post-judgment writs of garnishment that froze assets.

Although Defendants are correct about the factual circumstances surrounding those cases, the legal conclusion that they draw from them is incorrect. Even though none of those cases involved post-judgment writs of garnishment, it need not, and does not, follow that Plaintiffs' deprivation argument is so "clearly foreclose[d]" under the caselaw as to defeat the district court's subject matter jurisdiction. As they do in their reply brief, Plaintiffs validly claim that the distinction between pre- and post-judgment deprivations is not relevant for a due process analysis because the relevant point in the analysis is whether deprivation occurred before or after notice and opportunity to be heard, not whether the deprivation

14                    Opinion of the Court                    20-14504

occurred before or after judgment. Indeed, we have explicitly noted that "the guarantee [of due process] extends to property rights less substantial than full legal title" -- even though we ruled for the creditor in that case. *See Fed. Deposit Ins. Corp. v. Morrison*, 747 F.2d 610, 614 (11th Cir. 1984).

At bottom, Defendants have identified no caselaw suggesting that a plaintiff does not have a constitutionally protected interest in her property, even post-judgment.

## B.

Next up, the Defendants say that the corollary state action requirement is wanting here. Plaintiffs' state action argument rests largely on the Supreme Court's decision in *Lugar v. Edmondson Oil Company. See* 457 U.S. 922 (1982). In *Lugar*, the Court held that private parties can be considered state actors when they use state procedures to deprive a party of a constitutionally protected interest. It reasoned this way:

> [T]he Court has consistently held that constitutional requirements of due process apply to garnishment and prejudgment attachment procedures whenever officers of the State act jointly with a creditor in securing the property in dispute. . . . In each of these cases state agents aided the creditor in securing the disputed property; . . . in each case the Court entertained and adjudicated the defendant-debtor's claim that the procedure under which the private creditor secured the disputed property violated federal constitutional standards of due process. *Necessary to that conclusion is the holding that private use of the challenged state procedures with the help of state officials*

> *constitutes state action for purposes of the Four-teenth Amendment.*

*Lugar*, 457 U.S. at 932–33 (emphasis added) (citations omitted); *see also id.* at 941 (quotation marks and citation omitted) ("To act under color of law does not require the accused to be an officer of the State.  It is enough that he is a willful participant in joint activity with the State or its agents.").  *Lugar* held that the plaintiff stated a valid cause of action under section 1983 because the defendant sought the sequestration of the plaintiff's property by obtaining an *ex parte* writ of attachment from a state court clerk.  *Id.* at 942.  This was enough to establish state action.  *Id.*

Plaintiffs say that the garnishment procedures in Maryland are much like the ones considered in *Lugar*.  They allege that Maryland Rule 2-645 allows a judgment creditor to obtain a writ of garnishment by filing a request that simply contains (1) the caption of the action, (2) the amount owed under the judgment, (3) the name and last known address of each judgment debtor on whom a writ is requested, and (4) the name and address of the garnishee.  According to Plaintiffs, the process then *requires* the clerk, without participation from the judge, to issue a writ of garnishment, which, in turn, permits the creditor to hold the debtor's property in her possession.  Because the garnishment process in Maryland allows a debtor to use the power of the clerk of court to seize control over a creditor's property, Plaintiffs claim that the process constitutes state action.

Much like the previous element of their due process claim, Plaintiffs' state action claim is not so specious as to defeat federal question jurisdiction.  Maryland's garnishment process is like the process challenged in *Lugar*.  Defendants here used the power of

the clerk of court in Maryland to obtain writs of garnishment without affording Plaintiffs notice or an opportunity to be heard.

Defendants retort that *Lugar* requires Plaintiffs to directly challenge the constitutionality of Maryland's garnishment statute to allege state action. Because Plaintiffs are not "*per se*" raising a constitutional challenge against the statute, Defendants claim that Plaintiffs' state action claim cannot plausibly be sustained.

Defendants' argument fails for at least three reasons. First, even if Defendants' *Lugar* argument is correct, it improperly addresses the merits of Plaintiffs' claim, rather than determining simply whether it is "clearly foreclose[d]." *See Sanders*, 138 F.3d at 1352. Second, Defendants have impermissibly made this argument for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (holding that arguments that were not raised at the district court on the first instance cannot be raised on appeal). Third, Plaintiffs have plausibly raised an as-applied challenge to the use of Maryland's garnishment statute, as opposed to a facial challenge, because they claim that the Maryland rules were applied in a way that unconstitutionally deprived them of their property. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1255 (3d Cir. 1994) ("[T]he entry of the [confessed] judgment, when coupled with the seizure of the corporation's bank account, without prior notice or opportunity to be heard, does violate the Due Process Clause[.]"). While it is true the *Lugar* Court concluded that a creditor's "misuse or abuse" of a state statute does not amount to state action, *Lugar* also held that an allegation that "the deprivation of property resulted from a state statute that was procedurally defective under the Due Process Clause did state a cause of action under" section 1983. 457 U.S. at 923.

In short, Plaintiffs have sufficiently alleged the requisite state action.

## C.

The final issue is whether Plaintiffs have made a non-frivolous case that they were denied constitutionally sufficient process. This issue turns on whether *Overmyer* forecloses Plaintiffs' claim.

In *Overmyer*, the Supreme Court considered whether a cognovit note,[6] authorized by an Ohio statute, violated the plaintiff's right to due process under the Fourteenth Amendment. 405 U.S. at 175. That statute authorized an attorney to obtain a confessed judgment without the debtor's prior knowledge and regardless of the debtor's claims against the creditor. *Id.* at 175 n.1 (citing Ohio Rev. Code § 2323.13(D)). The plaintiff contracted with the defendant to perform a construction subcontract; the plaintiff became delinquent in payments; the defendant eventually renegotiated terms with the plaintiff and included a confession-of-judgment clause; the plaintiff eventually ceased making monthly payments; and the defendant obtained a judgment against the plaintiff without service or notice. *Id.* at 182–83.

The Court concluded that the plaintiff's due process claim was meritless because the plaintiff contractually waived its rights to notice and a hearing. *Id.* at 187. First, the Court reiterated that both notice and a hearing were subject to waiver. *Id.* at 185. Second, it concluded, based on the record, that the plaintiff knowingly

---

[6] "The cognovit is the ancient legal device by which the debtor consents in advance to the holder's obtaining a judgment without notice or hearing, and possibly even with the appearance, on the debtor's behalf, of an attorney designated by the holder." *Overmyer*, 405 U.S. at 176.

and voluntarily waived its right to notice and a hearing. *Id.* at 186. Third, the Court concluded that "a cognovit clause is not, *per se*, violative of Fourteenth Amendment due process." *Id.* at 187. But the Supreme Court explicitly cautioned that its decision in *Overmyer* "*is not controlling precedent for other facts of other cases.*" *Id.* at 188 (emphasis added).

Plaintiffs argue that their Fourteenth Amendment claim is not "clearly foreclosed" by *Overmyer* for two reasons. First, they claim that they are challenging "the use of Maryland's garnishment procedure to satisfy judgments obtained by confession" under the Fourteenth Amendment's Due Process Clause. Plaintiffs say that their claim is distinguishable from *Overmyer* because in that case, the Court held only that a cognovit clause is not per se constitutional under the Due Process Clause. Second, Plaintiffs argue that *Overmyer* is also distinguishable because Plaintiffs here allege that the Loan Agreements are void under the state's usury laws.

Plaintiffs are correct on both counts. First, Plaintiffs do not challenge the same kind of statute at issue in *Overmyer*. In *Overmyer*, the plaintiff challenged an Ohio statute that allowed a party to seek a confessed judgment without notice or a hearing based on a legally valid cognovit clause. Plaintiffs here challenge the next procedural step that a party would use to satisfy the confessed judgment: Maryland's garnishment procedure. It is Plaintiffs' contention that Maryland's garnishment procedure must afford notice and the opportunity to contest judgment. In fact, at least one circuit court has found a similar argument persuasive. *See Jordan*, 20 F.3d at 1255 (emphasis added) ("We then conclude, as did the district court, that *entry of the judgment, when coupled with seizure of the [plaintiff's] bank account, without prior notice or opportunity to be heard*, does violate the Due Process Clause of the

Fourteenth Amendment to the Constitution.").  But even if that argument ultimately proves unpersuasive under *Overmyer*, it is not "*clearly* foreclose[d]," which is the exacting requirement of frivolity a federal claim must reach before a federal court is deprived of subject matter jurisdiction over a federal question.[7]  *See Sanders*, 138 F.3d at 1352 (emphasis added).

Second, Plaintiffs' claim is also distinguishable because *Overmyer* made it crystal clear that its holding was not controlling in cases that presented different factual circumstances.  Plaintiffs argue that the Loan Agreements here are criminally usurious, and thus unenforceable under Florida law, which would mean that the underlying Agreements are *void ab initio*.  *See Local No. 234 of United Ass'n of Journeyman & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821 (Fla. 1953) ("[C]ourts have no right to ignore or set aside a public policy established by the legislature or the people.  Indeed, there rests upon the courts the affirmative duty of refusing to sustain that which by the valid statutes of the jurisdiction . . . has been declared repugnant to public policy.").  In *Overmyer*, by contrast,

_____

[7] Defendants argue in the alternative that Plaintiffs' due process claim is foreclosed by the Maryland Supreme Court's decision in *Billingsley v. Lincoln National Bank*, where the court, relying on *Overmyer*, held that Maryland's confessed judgment statute, when measured against the U.S. Constitution, is "constitutional on its face."  320 A.2d 34, 39 (Md. 1974).  Defendants' counter is unpersuasive: *Billingsley* is not controlling because it is neither a decision from the U.S. Supreme Court or this Court.  Moreover, the Maryland court had no occasion to, and did not determine whether the constitutional claim was wholly insubstantial and frivolous.

the plaintiff did not contest that it knowingly and voluntarily signed the cognovit clause.

The Third Circuit heeded this exact caution from *Overmyer* in considering whether a plaintiff had waived its right to notice and a hearing before the seizure of its assets:

> *Overmyer* plainly decide[d] [that] a debtor can waive its due process rights to a pre-deprivation hearing and notice when it voluntarily and intelligently consents to an agreement containing a cognovit clause. Nevertheless, [ ] *Overmyer* also indicate[d] [that] waiver is usually a question of fact. . . . The constitutional validity of any particular confession of judgment procedure depends on the validity of the debtor's waiver[.] . . . Accordingly, a court faced with a due process challenge to a confessed judgment should always inquire whether the judgment debtor's execution of a document permitting judgment by confession is a valid waiver of his constitutional right to pre-deprivation notice and hearing.

*Jordan*, 20 F.3d at 1272 (3rd Cir. 1994). *Overmyer* stated that the facts of a case matter a whole lot. We will not ignore that instruction today.

Defendants seize upon Plaintiffs' efforts to factually distinguish *Overmyer* in an effort to substantively attack Plaintiffs' usury claims. Defendants argue that the Resnicks lack standing to assert usury because Jonathan and Perry Resnick claim that their names were forged on the Guaranty Agreements. Defendants also assert that American Wellness waived its ability to claim usury three times, citing to one of the Funding Agreements and a decision by

the bankruptcy judge in the bankruptcy proceedings involving Plaintiffs. This waiver, according to Defendants, forecloses Plaintiffs' ability to allege usury under Florida law.

Again, we remain unpersuaded. Defendants' substantive attack on Plaintiffs' factual allegations and legal arguments only underscores the fact that Plaintiffs' claim is not "clearly foreclose[d]" under federal law. To be sure, it is possible that Plaintiffs have waived their due process rights in a way that forecloses their claim that the Loan Agreements are void under Florida law. But that question goes to the merits -- not jurisdiction.

Plaintiffs have sufficiently pled that they were denied constitutionally sufficient process to establish subject matter jurisdiction.

## III.

The district court also raised, but ultimately did not rule on, whether it should abstain under *Colorado River* from deciding the case while the dispute in Maryland proceeds. Defendants agree that the district court's abstention analysis is *dicta* in their opening brief, but still they ask us alternatively to dismiss Plaintiffs' claims on abstention grounds.

We decline Defendants' invitation to reach the question. The district court did not specifically rule on the abstention issue in the first instance, and so we will not reach it either. *Cf. Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1203, 1213 (11th Cir. 2015) (remanding to the district court to give it the first opportunity to apply a newly adopted legal rule); *Danley v. Allen*, 480 F.3d 1090, 1092 (11th Cir. 2007) (per curiam) ("While this Court certainly could review the record and applicable case law and render a reasoned decision on the qualified immunity issue, this is the responsibility of the district court in the first instance."); *Nyland v.*

*Moore*, 216 F.3d 1264, 1266 (11th Cir. 2000) (per curiam) (observing, in the context of a petition brought under 28 U.S.C. § 2254, that "[i]f there is an issue that the district court did not decide in the first instance, it is not properly before this Court and we remand for the district court's consideration"). Like the merits of Plaintiffs' due process claim, the district court can address abstention on remand.

★★★

Congress has given the federal courts original jurisdiction over claims that "aris[e] under" federal law, *see* 28 U.S.C. § 1331, and Plaintiffs have filed such a claim -- one that does not fall under the exceedingly narrow realm of claims that are "wholly insubstantial and frivolous." *See Sanders*, 138 F.3d at 1352 (quoting *Bell*, 327 U.S. at 682–83) (quotation marks omitted). Because of this, and because "we respect the important distinction between the lack of subject matter jurisdiction and the failure to state a claim upon which relief can be granted," we conclude that the district court erred in holding it lacked subject matter jurisdiction over Plaintiffs' claims. *See id.* at 1351–52.

**REVERSED and REMANDED.**

20-14504                NEWSOM, J., Concurring                1

NEWSOM, Circuit Judge, joined by MARCUS, Circuit Judge, and STORY, District Judge, Concurring:

I concur in the Court's judgment and join its opinion in full. I write separately simply to flag an issue that has bothered me since law school. In particular, I wish to express my skepticism of the rule, which underlies our resolution of this appeal, that a plaintiff's lawsuit "may sometimes be dismissed for want of *jurisdiction*"— *i.e.*, on the ground that the court lacks the authority even to consider it—where the claim it alleges under the Constitution or federal law is "wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946) (emphasis added).

The Court here is of course bound by *Bell*, and it dutifully—and correctly—applies *Bell*'s "wholly insubstantial and frivolous" standard in holding that the district court erroneously dismissed the plaintiffs' complaint for lack of jurisdiction. *See* Maj. Op. at 9–21. With respect to the wisdom of *Bell*, the Court goes about as far as it can, echoing then-Justice Rehnquist's critique of *Bell* as "'a legal landmine' and 'one of the most cryptic [cases] in the recent history of [the] [Supreme] Court's jurisprudence,'" and emphasizing just how "narrow" the "wholly insubstantial and frivolous" category must be. *Id.* at 11 & n.5 (quoting *Yazoo Cnty. Indus. Dev. Corp. v. Suthoff*, 454 U.S. 1157, 1159 (1982) (Rehnquist, J., dissenting from the denial of certiorari)). Speaking for myself, I'll say what the Court—which speaks for all of us and is hemmed in by vertical stare decisis—really can't: To the extent that the Supreme Court in *Bell* preserved the understanding that a "wholly insubstantial

and frivolous" claim somehow fails even to invoke the federal courts' subject-matter jurisdiction, it was wrong.

The federal-question statute gives federal courts jurisdiction over "all civil actions *arising under* the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (emphasis added). As the Supreme Court acknowledged in *Bell* itself, a district court has "arising under" federal-question jurisdiction within the meaning of § 1331 if the plaintiff's right to recover under his complaint "will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." 327 U.S. at 685. And as the *Bell* Court further acknowledged, "[j]urisdiction . . . is not defeated . . . by the possibility that the averments [in a plaintiff's complaint] might fail to state a cause of action on which [he] could actually recover." *Id.* at 682. The reason, the Court explained, is that there is an important difference between the merits of a plaintiff's claim and a court's jurisdiction to entertain that claim: "[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id.*

Even while recognizing this fundamental distinction between jurisdiction and the merits, though, the *Bell* Court proceeded, in the same breath, to acknowledge two "previously carved out exceptions" in which the demerits of a plaintiff's claim could trigger a jurisdictional failure—including, as relevant here, where the plaintiff's claim "is wholly insubstantial and frivolous."

*Id.* at 682–83.  In so doing, the Court obliterated the very distinction that it had purported to recognize.  That was a mistake.

In fairness, the *Bell* Court seemed to do what it did with some reservation, saying that "[t]he accuracy of calling these dismissals jurisdictional"—*i.e.*, dismissals for insubstantiality and frivolousness—"has been questioned."  *Id.* at 683.  And in the intervening years, the Supreme Court has continued to indicate some doubt about the propriety of the "wholly insubstantial and frivolous" standard as a jurisdictional rule.  *See Hagans v. Lavine*, 415 U.S. 528, 538 (1974) (calling "[t]he substantiality doctrine as a statement of jurisdictional principles" affecting a court's authority to entertain a case "'more ancient than analytically sound'" (quoting *Rosado v. Wyman*, 397 U.S. 397, 404 (1970)));  *cf. Shapiro v. McManus*, 577 U.S. 39, 45–46 (2015) (similar).  Commentators have likewise criticized the notion that a court's subject-matter jurisdiction should turn on a merits-based substantiality inquiry.  *See, e.g.*, Richard Matasar, *Rediscovering "One Constitutional Case": Procedural Rules and the Rejection of the* Gibbs *Test for Supplemental Jurisdiction*, 71 Calif. L. Rev. 1399, 1417–25 (1983).

The Supreme Court should bury the "wholly insubstantial and frivolous" gloss once and for all.  Not only does it blur what should be a clear line between a court's jurisdiction—*i.e.*, its power—to entertain a plaintiff's claim and the merits of that claim,

it is analytically unsustainable.[1]  Under it, courts must draw razor-fine distinctions between claims that are really weak and those that are really, *really* weak—between those that are *meritless*, and thus sufficiently un-nonserious to invoke the court's jurisdiction and to withstand a Rule 12(b)(1) motion (even if a Rule 12(b)(6) dismissal is immediately around the corner), and those that are *frivolous*, and thus fail even to implicate the judicial power.  Needless to say, that distinction is so slippery as to border on illusory.  *See, e.g.*, *Frivolous*, Black's Law Dictionary (11th ed. 2019) (defining "frivolous" to mean "[l]acking a legal basis or legal merit").

In my view, a plaintiff's complaint either pleads a federal claim on its face—in which case § 1331 "arising under" jurisdiction exists—or it doesn't.  Courts should get out of the business of peering through a plaintiff's allegations to test their bona fides as a means of assessing subject-matter jurisdiction.  If it turns out, as it sometimes will, that a plaintiff's contention is a loser—even an obvious loser—then the court should simply take jurisdiction and dismiss it on the merits for failure to state a claim.

---

[1] It also contradicts the Supreme Court's more recent teaching that courts should avoid "jurisdictionalizing" issues that are more properly understood as running to the merits.  *See, e.g.*, *Boechler, P.C. v. Comm'r*, 142 S. Ct. 1493, 1497 (2022) ("[W]e have endeavored to bring some discipline to use of the jurisdictional label." (quotation omitted)); *cf. also Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1292 (11th Cir. 2018) (Newsom, J., concurring) (observing that the *Rooker-Feldman* doctrine tends to unduly "jurisdictionalize" ordinary preclusion rules).